1999 OK 83

**Leslie C. LARMAN, Plaintiff/Appellant,**

v.

**Frankie L. LARMAN,
Defendant/Appellee.**

v.

**No. 89141.**

Supreme Court of Oklahoma.

Oct. 19, 1999.

As Corrected Oct. 28, 1999.

James E. Pence, Pence and Housley, Norman, Oklahoma, for the appellant.

Peggy Stockwell, Dave Stockwell, Stockwell Law Offices, Norman, Oklahoma, for the appellee.[1]

OPALA, J.

¶1 The dispositive issue tendered for corrective relief on certiorari is whether there was error in declaring two tracts of property inherited by the wife as marital assets. We answer in the affirmative.

## I

### THE ANATOMY OF LITIGATION

¶2 Leslie [wife] and Frankie [husband] Larman were married in 1983. In 1989 they moved into a rental home [Churchill] owned by the wife's mother and took over the payment of $450.00 monthly mortgage installments. Using their joint funds, the husband and the wife expended approximately $3,600 for certain Churchill improvements. They remained at Churchill until the death of the wife's mother in 1993. The wife inherited Churchill together with her mother's residence [Luglena] and $100,000 in liquid assets. Shortly after the mother's death, the wife bought (with inherited funds) a tract of land adjoining Luglena. Without any direction from the wife, the sellers conveyed the lot to the wife and husband as joint tenants.

¶3 Six months after the mother's death, the wife and husband moved from Churchill to Luglena, using spousal funds to make the mortgage payments on the latter property. At this point the wife began making the Churchill mortgage payments out of inherited funds. Not long after the family moved

1. Identified herein are only those counsel for the parties *whose names appear on the certiorari* *briefs.*

to Luglena, the wife refinanced the existing mortgages on Churchill and Luglena to secure a lower interest rate and monthly payment. In order to obtain refinancing, she had to place title to the properties in the names of both spouses as joint tenants. The refinancing cost (approximately $7,000) was paid out of the wife's separate funds.

¶4  The husband and wife separated after they took up residence at Luglena. He moved to Churchill and took over the mortgage payments there while she remained at Luglena. The wife filed for divorce and the marital bond was dissolved in 1996. By the terms of the decree the spousal property[2] came to be divided, custody of their minor children was awarded to the wife, and the husband's child support obligation set. According to the decree's terms (1) Luglena and the adjoining lot were set aside to the wife as her separate property and (2) Churchill was declared as spousal property. The marital property set aside to the *husband* consists of (1) Churchill (equity of $29,-500); (2) his retirement (assigned the value of $12,000); (3) 1992 Toyota (net value of $5,500), (4) a golf cart (value of $250), (5) a four-wheel vehicle (value of $2,000) and (6) miscellaneous personal property divided by agreement of the parties. Awarded to the *wife* as her spousal property was (1) the 1995 Ford Explorer (net value of $2,500) and (2)

miscellaneous personal property. The decree also awarded her support alimony of $6,000 (payable $100 monthly) in lieu of an interest in the husband's retirement. Each spouse was directed to hold the other harmless from any indebtedness on the real property set aside to him/her. The wife appealed for review of the property-division award. She urged error in the trial court's (a) award of Churchill to the husband, (b) failure to award her an equal quantum of the husband's retirement plan, which was then valued at $11,666, and (c) unequal distribution of the equities in other spousal properties. The husband counter-appealed to challenge the trial court's declaration that Luglena and the adjoining lot constituted the wife's separate property.

¶5  The Court of Civil Appeals [COCA] reversed in part the property-division award, holding that *spousal property consists of both Churchill and Luglena*[3] and that the wife was entitled to a one-half interest in the husband's retirement benefits as well as a monetary award of $1,380.[4] On certiorari, the wife claims error *only in COCA's inclusion of Churchill and Luglena* in the spousal property category.

¶6  On certiorari granted upon the wife's petition, COCA's opinion is vacated; the trial court's property-division award is affirmed as modified;[5] and the cause is remanded for

---

**2.** The statutory law refers to spousal property as that which is acquired by the joint efforts of spouses during their marriage. *Barnett v. Barnett*, 1996 OK 60, 917 P.2d 473, 475 n. 3.

**3.** COCA's pronouncement declared the spousal estate consists of (1) Churchill (assigned the net value of $29,500); (2) Luglena (with a net value of $32,000); (3) husband's retirement (valued at $11,666); (4) 1992 Toyota awarded to husband (net value $5,500); (5)1995 Ford Explorer awarded to wife (net value of $2,500); (6) four-wheel vehicle and golf cart awarded to husband (value of $2,250); and (7) miscellaneous personal property divided by agreement of the parties. COCA *affirmed* the nisi prius *allocation of Churchill* to the husband *but* held that *Luglena was to be set aside to the wife* as her part of spousal property.

**4.** According to COCA, the spousal assets awarded the husband (Churchill, his vehicle and the golf cart and four-wheel vehicle) were worth $37,500 and to the wife (Luglena and her vehicle) were valued at $34,500. *In order to "equalize" this property division, COCA held the wife*

*was entitled to alimony in lieu of property of $1,380, payable monthly without interest at the rate of $115.*

**5.** By the settled-law-of-the-case doctrine, pronounced in *Barnett, supra* note 2 at 477 and *Morrow Dev. v. American Bank and Trust*, 1994 OK 26, 875 P.2d 411, 413, *the following COCA modifications of* (as well its affirmance of) nisi prius dispositions, which are unaffected by certiorari, *must be left undisturbed.* These are:

COCA modifications:—one-half interest in husband's retirement to the wife (valued at $11,-666). This set aside the nisi prius award of only $6,000 support alimony to wife in lieu of her interest in the retirement.
COCA-affirmed dispositions:
(1) *spousal property set aside to the wife*—(a) 1995 Ford Explorer and (b) miscellaneous personal property (divided by agreement), as well as (c) *separate property set aside to the wife* of the lot purchased with her separate funds.; (2) *spousal property set aside to the husband*—(a) 1992 Toyota, (b) golf cart, (c) four-wheel

further proceedings to be consistent with today's pronouncement.

## II

### THE WIFE'S PRESUMPTIVE INTER-SPOUSAL GIFT OF HER SEPA-RATE PROPERTY TO THE HUS-BAND IS REBUTTED BY CLEAR AND CONVINCING PROOF THAT THE DEEDS BY WHICH HE WAS INCLUDED AS A JOINT TENANT–GRANTEE WERE NOT INTENDED AS A GIFT OF THE WIFE'S INTER-EST IN THE LANDS

¶ 7 The wife argues that COCA *erred* in holding that all her inherited real estate was spousal property. According to the wife, the presumption of joint ownership was clearly rebutted by evidence that title to Churchill and Luglena was placed in the husband's name (as joint tenant with the wife) solely for economic reasons, not for the purpose of effecting a gift. The husband counters that the law presumes an interspousal gift when the wife transfers title of her property to the husband as a joint tenant.

¶ 8 Gifts of realty are governed by the principles of personal property law.[6] An essential element of a gift is the *donor's intent gratuitously to pass the title* to do-nee.[7] A transfer by one spouse of separate property to another *does not by itself erase the separate character of the asset* (or the real property transferred). The original ownership regime must be respected unless there is proof of an interspousal gift.

¶ 9 Oklahoma's extant jurisprudence allows a *rebuttable presumption* of a gift where title to separately held real estate is placed by one owner-spouse in both spouses'

---

vehicle and (d) miscellaneous personal property (divided by agreement).
*Modified* by today's *pronouncement* are *only* the following COCA divisional dispositions:
(*l*) *Churchill* (Churchill, which was declared a spousal asset by both the trial court and by COCA, was awarded to the husband);
(2) *Luglena* (Luglena, which was declared to be the wife's separate property by the trial court, was later set aside by COCA to the wife as a spousal asset); and
(3) $1,380 alimony in lieu of property to the wife (COCA declared this monetary award was necessary "to equalize the property division").
Because by this opinion *both* Churchill and Luglena are declared to be the wife's separate property, COCA's *monetary award must fall (along with its dispositions of Luglena and Churchill)* as no longer needed "to equalize" the re-division made on certiorari.

6. The concept of *gift* comes from the law of personal property from whence it traveled to the law of real property. For a discussion of the elements of a gift, see §§ 7.1, 7.12, Walter B. Raushenbush, THE LAW OF PERSONAL PROPERTY by Ray Andrews Brown (3d ed.1975).
§ 7.1. For the making of a valid gift there are 3 general requisites: (*l*) there must be either a deed by the donor transferring the property or in the case of a parol gift, a delivery of the subject matter by the donor to the donee, or some other act or course of conduct on the donor's part, which is accepted by the courts as equivalent thereto; (2) *the donor must possess the intent to give* and (3) the donee must accept. The burden of proof is on the donee to show that these requirements have been met. (emphasis supplied).

§ 7.12. The transaction of a gift *rests on the volition of the two parties*, the donor and the donee. The mere fact of the delivery of possession does not therefore, standing alone, prove a gift, but the donor must also have intended gratuitously to pass the title to the donee.... **Unless ... the intent to give title be proven clearly the transaction will not be sustained as a gift.** To ascertain the probable intent of the alleged donor the court will consider [1] *the circumstances* of the donor, [2] the *relationship* between the parties, and [3] the *size of the gift* and its relation to the total amount of the donor's property, in order to discover the reasonableness of the claim that the donor really intended to make the donation claimed.... (emphasis supplied).

7. *Raushenbush, supra* note 6 at §§ 7.1, 7.12. The elements necessary to establish an *inter vivos* gift are: (1) a competent donor, (2) freedom of will on the part of the donor, (3) donative intent to make the gift, (4) a donee capable of accepting the gift, and (5) delivery by the donor and acceptance by the donee. Additionally, the gift must be gratuitous and irrevocable and *go into immediate and absolute effect* with the donor relinquishing all control. In short, gifts require an immediately effective, unqualified and gratuitous transfer of ownership to the donee. *In re Estate of Estes*, 1999 OK 59, 983 P.2d 438, 445, citing *Davis v. Nat'l Bank of Tulsa*, 1960 OK 151, ¶ 17, 353 P.2d 482; *In re Estate of Stinchcomb*, 1983 OK 120, 674 P.2d 26, 30; *Foster v. Rose*, 205 Okl. 397, 238 P.2d 332, 334 (1951).

names as joint tenants.[8] If a joint tenancy deed facially effects an *unconditional transfer*, it is deemed to be a *presumptive interspousal gift*, whose effect can be overcome by clear and convincing evidence of a contrary intent.[9]

■ ¶10 Where, as here, the record shows that title was passed *without intent* to invest the spousal grantee with an interest in the property, but rather for a purpose that is *clearly collateral to any intended change in the existing ownership regime*, the conveying marital partner will not be deemed to have made an unconditional, presently effective interspousal gift of separate property.[10] *The burden would then shift to the donee (grantee) spouse to prove the factum of a gift in praesenti.*[11]

### The Luglena and Churchill Properties

■ ¶11 The wife argues she did not intend to make a gift to the husband of a joint interest in her separate real property (in Churchill and Luglena), which she had inherited from her mother. According to the wife, she included the husband's name upon the deeds as a joint tenant for the *sole purpose of refinancing the mortgage loans*

on both properties in an effort to secure a lower interest rate and reduced monthly payments.[12] The husband benefitted financially by the refinancing process, the wife urges, because joint funds were used to pay current household bills (including the Luglena mortgage).

¶12 After the family moved from Churchill to Luglena, the wife contacted the bank about refinancing the existing loans at a lower interest rate. She was then paying the Churchill mortgage with her separate funds and the Luglena mortgage with joint funds. According to the bank lending officer, the Federal National Mortgage Association (Fannie Mae)[13] requires that title to property stand in the name of all individual borrowers if there be more than one in number. The officer advised the wife that the loans could not be made if title to both properties remained solely in her name. The lending institution prepared the deeds and mortgages, which were then signed by both spouses. *By the deeds title was conveyed to them in the Luglena and Churchill properties as joint tenants.*

¶13 Before placing title to Luglena and Churchill in the joint tenancy of the spouses,

8. *Chastain v. Posey*, 1983 OK 46, 665 P.2d 1179, 1182–83; *Fletcher v. Fletcher*, 206 Okla. 481, 244 P.2d 827, 830 (1952); *King v. Courtney*, 190 Okl. 256, 122 P.2d 1014, 1015 (1941).

9. The transfer is not a presumptive gift in every case, but only when the deed is consistent with an unconditional transfer. *Chastain, supra* note 8 at 1182–83.

10. *See in this connection, In re Marriage of Wojcicki*, 109 Ill.App.3d 569, 65 Ill.Dec. 173, 440 N.E.2d 1028, 1030–31 (1982) (the husband's transfer of his separate real property to a joint tenancy regime with his wife for the purpose of avoiding probate was not a gift of the property to the marital estate); *Weberg v. Weberg*, 158 Wis.2d 540, 463 N.W.2d 382, 386–87 (App.1990) (the court rejected the wife's argument that the husband's separate funds became marital property when placed in a joint account based on the absence of evidence showing donative intent and on the husband's testimony that he placed the funds in the joint account to protect the wife in the event of his death); *Berry v. Breslain*, 352 N.W.2d 516, 518 (Minn.App.1984) (the wife's home, although transferred upon marriage to a joint tenancy regime with the husband, remained her separate property because the joint tenancy

was created primarily to ensure security on the mortgage).

11. *In praesenti* means literally "at the present time." Black's Law Dictionary 792 (6th ed.1990). In legal parlance the phrase denotes that *which in law is presently or immediately effective*, as opposed to something that will or would become effective in the future [*in futuro*]. See *Van Wyck v. Knevals*, 106 U.S. 360, 365, 1 S.Ct. 336, 337, 27 L.Ed. 201 (1882).

12. At the time the mortgages were refinanced, the balance due on Churchill was $32,728.72 and $62,494.61 on Luglena. The Churchill monthly mortgage payment was reduced from $450 to approximately $386. The monthly mortgage payment on Luglena was reduced from $800 to approximately $656.

13. According to the bank lending officer, Fannie Mae sets the standards by underwriting guidelines for fair conventional mortgages in the United States. All investors or secondary market makers rely on these guidelines in determining the eligibility of mortgages. The lending officer testified that the lending company could not have approved the loan based on either of the spouses' individual income.

the wife talked to the lawyer for her mother's estate. The latter advised her against taking this action. According to the wife, she did not understand the legal consequences of changing the ownership regime by transferring title to her and her husband as joint tenants in the land.

¶ 14 The husband confirmed by his testimony that the wife *did not tell him she was making to him a gift of her inherited real estate.* He was not aware that the property was in joint tenancy or that he even had a "claim of ownership" in it until after his wife had commenced the divorce action. The husband first learned that he was listed on the three deeds as a joint tenant when, at the suggestion of counsel, he obtained a copy of the documents.

■ ¶ 15 In short, where, as here, the "owning spouse" is unable to refinance mortgaged property because the lender requires that, in order to qualify for a loan, both spouses be record owners and sign the loan-related documents, the presumption of a gift (arising from a joint-tenancy ownership regime) is overcome.

¶ 16 We hence hold that on this record, absent any contrary proof, the transfer to the husband by a joint tenancy deed clearly was not intended to constitute a gift *in praesen-*ti—a presently effective, unconditional interspousal gift to the husband.

## III

## THE RECORD IS INSUFFICIENT FOR THIS COURT'S FINAL DIVISION OF THE MARITAL ESTATE

■ ¶ 17 Divorce suits are of equitable cognizance. A trial court has discretionary power equitably to divide the marital estate.[14] The reviewing court will not disturb the division absent an abused discretion [15] or a finding that the nisi prius decision is clearly contrary to the weight of the evidence.[16] Oklahoma's statutory law mandates a fair and equitable division of spousal property.[17] *The enhancement* in value of one spouse's separate estate, when attributable to personal efforts of labor by either spouse, constitutes spousal property that is subject to division (frequently effected by an award of alimony in lieu of property).[18] The *burden* is upon the non-owning spouse to show *that the enhancement sought to be declared as a marital share in the premises of the other is the result of either spouse's in-marriage endeavors.*[19]

■ ¶ 18 If the record is sufficient, this court will—in an appeal from an equity-suit decision—render that decree which the

14. *Barnett, supra* note 2 at 477; *Teel v. Teel,* 1988 OK 151, 766 P.2d 994, 998; *Johnson v. Johnson,* 1983 OK 117, 674 P.2d 539, 544; *Carpenter v. Carpenter,* 1983 OK 2, 657 P.2d 646, 651; *Peters v. Peters,* 1975 OK 114, 539 P.2d 26, 27; *West v. West,* 1954 OK 84, 268 P.2d 250, 253.

15. *Barnett, supra* note 2 at 477; *Kiddie v. Kiddie,* 1977 OK 69, 563 P.2d 139, 140–141; *Carpenter, supra* note 14 at 651; *Reed v. Reed,* 1969 OK 95, 456 P.2d 529, 533.

16. *Barnett, supra* note 2 at 477; *Johnson, supra* note 14 at 544; *Carpenter, supra* note 14 at 652.

17. The terms of 43 O.S.Supp.1992 § 121 provide in pertinent part:

... As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall, subject to a valid antenuptial contract in writing, make such division between the parties as may appear *just and reasonable,* by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof....
(emphasis supplied).
A just and reasonable division of spousal assets means an "equitable", not an equal one. *Gray v. Gray,* 1996 OK 84, 922 P.2d 615, 620; *Stansberry v. Stansberry,* 1978 OK 77, 580 P.2d 147, 150.

18. Spousal property is that which is accumulated by the joint efforts of the spouses during their marriage. The increased or enhanced value of a spouse's separate property which is produced by the efforts, skills or funds of either spouse is treated as a divisible spousal asset. *Thielenhaus v. Thielenhaus,* 1995 OK 5, 890 P.2d 925, 930–931; *Templeton v. Templeton,* 1982 OK 127, 656 P.2d 250; *Williams v. Williams,* 1967 OK 97, 428 P.2d 218, 222; *Longmire v. Longmire,* 1962 OK 219, 376 P.2d 273, 275; *Moyers v. Moyers,* 1962 OK 146, 372 P.2d 844, 846–47.

19. *Thielenhaus, supra* note 18 at 931; *Estate of Hardaway,* 1994 OK 30, 872 P.2d 395, 398; *Templeton, supra* note 18 at 252.

chancellor should have entered.[20] When reviewing an equity suit, an appellate court cannot exercise first-instance cognizance by making original findings of fact. Whenever necessary findings are absent, the cause must be remanded with directions that they be made.[21]

¶ 19 Because the trial court treated a substantial portion of the wife's separate property as part of the spousal estate, there was no opportunity for a meaningful inquiry into whether the value of her separate land, while in joint possession, came to be enhanced by the labor skills of either spouse or the use of spousal funds. The record is hence far from adequate for this court to enter on certiorari a property division award that the trial judge should have entered.[22] In light of today's pronouncement (that Churchill as well as Luglena constitute a separate asset of the wife and are not subject to division as a spousal asset), it is the husband's due that he be afforded an opportunity to present on remand proof of enhancement, if any he have, and to have the post-appellate division of spousal property re-examined with a view to a fair and equitable distribution of the marital estate.

## IV

### THE HUSBAND'S CERTIORARI-RELATED ATTORNEY'S FEE QUEST

¶ 20 The husband claims in this court a certiorari-related counsel fee. In the class of statutorily authorized litigation, counsel fee incurred in corrective process, much like taxable costs, may be allowed by the court in which the services were performed.[23] Counsel-fee allowance claimed in matrimonial disputes never depends on one's status as prevailing party in the case. It may be granted to a litigant who qualifies for the added benefit by the statute-mandated process of judicial balancing of the parties' equities.[24]

¶ 21 Based on our review of the record, there are here no compelling or overriding equitable considerations in favor of either litigant. We hence hold that each party shall bear its own counsel-fee obligation and any other litigation-related expenses incurred in the certiorari process. The trial court is not precluded from entertaining the parties' pleas for a counsel-fee award (and for litigation expenses) that will be connected with legal services to be rendered and expenses to be incurred in the post-remand phase of the proceedings.[25] Requests for an allowance of these liability items should be brought in the trial court after conclusion of the post-remand evidentiary process.

## V

### SUMMARY

¶ 22 When, as here, the evidence clearly accords with the conclusion that title to one spouse's separate real estate was placed in both names as joint tenants solely to achieve a *purpose collateral to making a gift*, the presumption of an interspousal gift is deemed rebutted. The burden would then

---

20. *Thielenhaus, supra* note 18 at 933; *Matter of Estate of Bartlett*, 1984 OK 9, 680 P.2d 369, 374; *Teel, supra* note 14 at 999 n. 21; *Johnson v. Johnson*, 1983 OK 117, 674 P.2d 539, 546.

21. *Barnett, supra* note 2 at 476 n. 8; *Davis v. Gwaltney*, 1955 OK 362, 291 P.2d 820, 824.

22. *Barnett, supra* note 2 at 476 n. 8; *Thielenhaus, supra* note 18 at 933; *Bartlett, supra* note 20 at 374; *Carpenter v. Carpenter*, 1982 OK 38, 645 P.2d 476, 480.

23. The terms of 43 O.S.Supp.1997 § 110 provide that either spouse may be required to pay "reasonable expenses of the other as may be just and proper under the circumstances."
   Rule 1.37(a)(5), Oklahoma Supreme Court Rules, 12 O.S.Supp.1997, Ch. 15, App. 2, provides in pertinent part:

   (a) Trial Court Jurisdiction. After a petition in error has been filed, the trial court retains jurisdiction in the case for the following purposes:
   * * *
   (5) In matrimonial litigation, to award attorney fees for services rendered or to be rendered in connection with the appeal....
   See also *Jones v. Jones*, 1980 OK 85, 612 P.2d 266, 268; *Chamberlin v. Chamberlin*, 1986 OK 30, 720 P.2d 721, 727–728.

24. *Stork v. Stork*, 1995 OK 61, 898 P.2d 732, 739–740; *Thielenhaus, supra* note 18 at 935; *Harmon v. Harmon*, 1983 OK 89, 770 P.2d 1, 4; *Chamberlin, supra* note 23 at 727; *Carpenter, supra* note 14 at 653.

25. *Thielenhaus, supra* note 18 at 935.

shift to the donee spouse to prove the factum of a gift that is claimed. The husband's proof falls short of establishing an interspousal gift.

¶23 Because there is in this record no proof of value enhancement, if any there was, in the wife's separate property, produced by the labor or skills of either spouse or the use of spousal funds, we must remand the cause to afford the husband an opportunity to tender the value-enhancement issue in a post-remand evidentiary proceeding.

¶24 On certiorari previously granted on the wife's petition, the Court of Civil Appeals' opinion is vacated; the trial court's property-division award is affirmed as modified, subject to the trial court's authority to re-examine—at the conclusion of all post-remand evidentiary proceedings that are to be confined *solely* to the remanded value-enhancement issue—the certiorari-reduced inventory of spousal assets with a view to adjusting the division *only* to the extent necessary to achieve a fair and equitable distribution of the total marital estate; each party is ordered to bear its own certiorari-related litigation expenses and those for services of legal counsel; and the cause is remanded for further proceedings to be consistent with today's opinion.

¶25 ALL JUSTICES CONCUR.