2003 OK CIV APP 58

**Jay CROCKER, Plaintiff/Appellant,**

v.

**Sheryl CROCKER, Defendant/Appellee.**

**No. 96,950.**

Court of Civil Appeals of Oklahoma, Division No. 3.

May 23, 2003.

---

Gerald C. Dennis, Dennis & Branam, Antlers, OK, for Plaintiff/Appellant.

Shannon Reasor, Stamper, Hadley & Reasor, Atoka, OK, for Defendant/Appellee.

Opinion by KENNETH L. BUETTNER, Judge:

¶ 1 Plaintiff/Appellant Jay Crocker (Husband) appeals the property division, custody award, and other alleged errors at trial in the divorce proceeding between Husband and Defendant/Appellee Sheryl Crocker (Wife). Husband asserts errors in the trial court's ruling that a ranch purchased during the marriage was Wife's separate property, and the decision to award sole custody of the minor child to Wife. Because the trial court's finding that the ranch was Wife's separate property was clearly contrary to the weight of the evidence, we reverse that portion of the decree and remand for an equitable division of the ranch proceeds as marital property. We find that the decision to award custody of the child to Wife was not against the clear weight of the evidence and affirm that order.

¶ 2 With respect to the division of property, Husband's specific complaint is that the trial court erred in determining that Wife never intended to make a gift to Husband of half the value of ranch property, and that therefore the proceeds from the sale of the 2,048 acre ranch was Wife's separate property.

¶ 3 Husband and Wife married July 2, 1997 in Arizona. After the marriage, Husband and Wife came to Oklahoma and purchased the ranch in November 1997. There is no dispute that the $387,000 earnest money and down payment on the ranch came from assets Wife had before the marriage. The ranch was titled in joint tenancy. Husband argues that although Wife provided the purchase money, Husband provided the labor for improvements which increased the value of the land. Husband and Wife purchased the ranch for $716,726 in 1997, and sold it for $860,580 in January 2001. After paying the mortgage and fees, $424,196.05 was placed in trust pending the outcome of the divorce proceedings.

¶ 4 In the decree, the trial court included the following provisions:

11. At the time the parties were married in July 1997, (Wife), owned and possessed money, horses and other property, both real and personal, valued in excess of one and one half million dollars.

12. It is uncontested that (Wife), provided all of the purchase money for the Crocker

Ranch in Atoka County, Oklahoma, and for the operation of the ranch.

13. Prior to the marriage of the parties, (Wife) purchased a CAVCO mobile home, ... and thereafter (Wife) paid the cost to move the same to Oklahoma and located it on the Crocker Ranch property as temporary housing. In connection with the ultimate sale of the Crocker Ranch, the mobile home was sold for the sum of $79,000, which the court has heretofore ordered to be paid to (Wife) as her sole and separate property. The prior order of the Court is incorporated by reference and confirmed by this Decree of Divorce.

14. All ranch livestock, feed, ranch machinery and equipment were acquired with money provided by (Wife), except for: (a) $40,000.00 borrowed in February 2000 from the Bank of Kremlin, ... for the purchase of sheep and goats; and (b) $20,000.00 invested by (Husband's) sister, Mrs. Diane Crocker.

15. During the marriage, (Husband), did not contribute money or property for the purchase or operation of the Crocker Ranch and he did not earn wages or other compensation during the marriage. (Husband) did work on the ranch in conjunction with hired ranch hands and received his total subsistence without charge while doing so.

16. In purchasing the ranch and accepting title from sellers, (Wife) was not represented by separate legal counsel and was not advised to obtain legal counsel.

17. Several witnesses, including Mr. David Youngblood, legal counsel responsible for the closing and preparation of documents, ... cannot remember if (Wife) and (Husband) were explained the different ways title to property could be held and the possible legal effect of each.

18. No one explained to (Husband and Wife) what the legal effect of a joint tenancy warranty deed was, or even that (Wife) could hold the property in her name only.

19. (Wife) did not intend or agree to make a gift of one-half interest in the Crocker Ranch to (Husband), and no gift was in law or in fact so made to (Husband). Therefore, the funds on deposit in ... the approximate amount of $424,000.00 are the separate property of (Wife)....

¶ 5 Husband asserts that when property is purchased by one spouse with separate assets during the marriage and placed in joint tenancy, a presumption arises that the property becomes marital property and that the spouse intended a gift of one-half interest in the property, citing *Chastain v. Posey*, 1983 OK 46, 665 P.2d 1179. Husband argues the evidence did not support a finding that this presumption was rebutted, that the evidence did not support the trial court's finding that Wife was unaware that the ranch could be titled in her name only, and also that nothing required Wife to be represented by separate counsel during the purchase of the ranch.

¶ 6 The record reveals that throughout the divorce proceedings, Wife asserted the ranch, and later its proceeds, were her separate property.[1] At trial, Wife testified that she and Husband entered a contract for the purchase of the ranch, but then stated "I made a purchase agreement...." Wife also testified that when she and Husband met and married in Arizona, she owned a home there, debt free, valued at $300,000. Wife explained that Husband was unhappy in Arizona and the couple therefore came to Oklahoma to buy land. Wife mortgaged her Arizona home to pay for the ranch property in Oklahoma.[2]

1. Wife asserted that the down payment on the ranch was her separate property which she had inherited from her first husband. Wife also asserted that the mobile home which the parties installed on the ranch, and which was their primary residence, was purchased by Wife with her separate funds for $71,000 prior to the marriage. Wife stated she initially put down $50,000 cash, which was her own money, for the ranch. The record contains a check from Wife's personal checking account for $50,000 made out to the law firm of Moore, Mowdy and Youngblood, for the escrow required on the assumption of the mortgage. The record also contains a note to Wife only from realtor Janet Jenkins with details of the sale and the value of the ranch. Another note from Jenkins to someone named Connie states that Wife is the one getting the money for the ranch purchase.

2. Wife sold the home in Arizona in 1999. The settlement statement on that sale states that the seller is "Sheryl Crocker, wife of Jay Crocker, a married woman as her sole and separate property." Counsel for Husband inferred that Wife knew that she could be married and still sell that

Wife acknowledged that she signed the purchase contract for the ranch at the office of Janet Jenkins and Joe Black, and that the contract showed Wife and Husband as the buyers of the ranch. Wife testified that at that time she did not tell anyone that she wanted to buy the property in her name alone. Wife also acknowledged the warranty deed for the ranch which granted the property to Husband and Wife as joint tenants. Wife testified that she first saw the warranty deed during the divorce proceedings. Wife later agreed she probably saw the warranty deed before that time, but she did not read it until the divorce proceedings began and she did not know the meaning of joint tenancy with right of survivorship. Wife testified she did not know she had the option to purchase the ranch in her individual name.

¶ 7 Wife also agreed that she and Husband both signed an agreement to assume the note on the property from the sellers for the amount of $310,000. Wife testified that Husband was legally obligated to pay the note, just as she was, but she stated that Husband "didn't have anything to lose." Wife testified she paid $337,795 cash to complete the purchase. Wife acknowledged that when she filled out the homestead exemption form she listed both herself and Husband as the owners of the property.

¶ 8 Wife testified that she and Husband both did the work required to improve the land. Wife testified that she purchased cattle to run on the land and that she was responsible, along with Husband, for feeding the cattle and other livestock. Wife estimated that she contributed about $500,000 to the ranch during the four years the parties owned it, which included money for the land, livestock, and equipment. Wife identified the exclusive sales listing in which she and Husband listed the ranch for sale in August 2000. Wife testified she never told anyone the ranch was her individual property. Wife explained that she still was unaware she had a choice as to the names included on the deed and that she thought that both names on the deed would have to be listed as sellers in

order to sell the property. Wife also identified the purchase contract entered January 26, 2001 in which Noah and Roger Springer agreed to purchase the ranch for $860,580, and included the names of Husband and Wife as sellers. Husband and Wife also signed the joint tenancy quit claim deed conveying the ranch to the Springers. Wife testified that at the closing March 6, 2001 (after the petition for divorce had been filed), the lawyers involved realized there was a dispute between Wife and Husband over ownership of the ranch.

¶ 9 Husband testified that when he and Wife went to Janet Jenkins' office to sign the purchase contract on the ranch, Wife stated she wanted both of their names on the contract. Husband stated that Wife's explanation was that she was putting in the money and Husband was going to be doing all the work, so the ranch should be in both of their names.

¶ 10 Attorney David Youngblood closed the sale of the ranch. He testified first that he assumed he asked Husband and Wife how they wanted the ranch to be titled. He later stated that he was certain that Husband and Wife told him that joint tenancy was appropriate. Youngblood stated he was aware that the money for the purchase came from Wife.

¶ 11 In *Chastain, supra,* the Oklahoma Supreme Court explained the presumption of a gift which arises when one spouse uses separate property to purchase property during marriage. The court quoted the original statement of the rule in Oklahoma from the case of *Mendenhall v. Walters,* 1916 OK 524, 157 P. 732, 53 Okla. 598:

> The rule is, where a husband purchases lands with his own money and takes title thereto in the name of his wife or in the joint name of himself and wife, no trust arises in favor of the husband by reason thereof in the lands standing in the name of the wife, but the presumption of law is,

house as separate property, in order to discount Wife's testimony that she did not know she had a choice not to take title to the ranch in joint tenancy with Husband. Wife asserted that the

settlement statement was prepared for her and that she did not direct the closing company to draft it a particular way.

in the absence of evidence to the contrary, that an advancement or gift was intended.

In *Chastain*, shortly after the parties' marriage, they placed most of their assets in joint tenancy. 665 P.2d at 1182. The trial court found that the parties simply intended to place the property in joint tenancy for as long as they were married. *Id.* The trial court also placed the burden on the wife to prove that the husband intended to make a gift of half the property. *Id.* On appeal, the Supreme Court noted the rule above and explained that "in the absence of clear and convincing evidence to the contrary, the presumption is made that where a spouse furnishes consideration for a property conveyance and places title thereto in joint tenancy, an advancement or gift of one-half interest is intended." *Id.* at 1183. The court found there was no evidence presented at trial to rebut the presumption. *Id.* The court therefore reversed the property division award and remanded for new trial on the issue of division of jointly acquired property. *Id.*

¶ 12 In this case, Wife relies on *Larman v. Larman*, 1999 OK 83, 991 P.2d 536, which Wife contends requires affirmance of the trial court's decision that Wife did not intend to give Husband one-half interest in the ranch. In *Larman*, the wife inherited two homes and assets from her mother during the marriage. The wife used the inherited money to purchase land next to one of the homes and "without any direction from the wife, the sellers conveyed the lot to the wife and husband as joint tenants." *Id.* at ¶ 2. The wife later refinanced the mortgages on both homes and at that time the mortgagee required the wife to place title to both properties in the names of the spouses as joint tenants. *Id.* at ¶ 3. When the parties separated, they each lived in one of the homes. The trial court declared one home to be the wife's separate property, and the other was characterized as spousal property. *Id.* at ¶ 4.

¶ 13 In *Larman*, the wife explained that she "did not understand the legal consequences of changing the ownership regime by transferring title to her and her husband as joint tenants in the land." *Id.* at ¶ 13. The court also noted the husband's testimony indicated that the wife had never told him that she was making a gift to him. *Id.* at ¶ 14. Additionally, there was evidence that the mortgage company had insisted that the property be placed in joint tenancy in order to refinance the mortgage. The court concluded that the presumption of a gift was overcome, and reversed the trial court's decision that the inherited home was marital property. *Id.* at ¶ 15–16.

██ ¶ 14 In this case, Wife allowed the property to be placed in joint tenancy, and the presumption of a gift arose. Wife testified that it was not her intent to make a gift of the money used to purchase the ranch. Wife also indicated that she was unaware that she had a choice in how the ranch property was titled. However, Husband presented evidence that Wife was skilled in property transactions and had purchased property with her first husband and also on her own. Husband argued that Wife therefore knew what she was doing when she took the ranch titled in joint tenancy. Husband also testified that Wife stated the ranch was "theirs." Other witnesses testified that Wife referred to the ranch as belonging to Wife and Husband. The attorney who closed the purchase testified that Wife indicated she wanted the property placed in joint tenancy.

¶ 15 Beyond Wife's testimony at trial that she did not intend to give Husband a half interest in the ranch by placing it in joint tenancy, there is no other evidence which might rebut the presumption of a gift based on the purchase of joint tenancy property with separate funds during the marriage. The presumption would be meaningless if it could be overcome by nothing more than testimony of lack of intent by the party hoping to avoid the effect of the presumption, particularly where there is other evidence supporting an intent to gift. Wife's actions, along with testimony of the other witnesses supports a finding that Wife intended to gift half the ranch to Husband. Only Wife's trial testimony attempts to rebut the presumption. The trial court's conclusion that the presumption of a gift was overcome in this case is against the clear weight of the evidence. We therefore reverse the trial court's

finding on this issue and remand for an equitable division of the ranch proceeds.[3]

¶16 Husband's remaining argument is that the trial court erred in awarding sole custody of the minor child to Wife. Child custody decisions are matters of equitable cognizance, and we will not disturb an award of custody unless it is against the clear weight of the evidence. *Kahre v. Kahre,* 1995 OK 133, 916 P.2d 1355, 1360. We have reviewed the record and find that the award of custody to Wife is not against the clear weight of the evidence. There was evidence that both parties were good parents. Husband and Wife also both presented testimony tending to show brief lapses in good parenting on the part of the other. The evidence revealed that the minor child, born July 16, 1997, had bonded with his half sister (Wife's child from her first marriage) and that Wife had been the primary care giver for the minor child since his birth. Husband's plan for daycare was either to take the boy along to do ranch work, or to leave him with his sister. Wife testified her mother planned to live with Wife in order to provide in-home daycare. We find no reason to disturb the custody award.

AFFIRMED IN PART/REVERSED IN PART AND REMANDED.

ADAMS, P.J., and JOPLIN, C.J., concur.

---

**3.** Although it does not impact our decision, we note our disagreement with Husband's assertion that the divorce decree indicated that Wife should have been afforded independent legal representation when the ranch was purchased. The trial court simply relied on that as a factor supporting its conclusion that Wife did not intend to make a gift of half the ranch to Husband.