2007 OK CIV APP 123

**BANCFIRST, Appellant,**

v.

**Harold COX and Geraldine Cox, Appellees.**

**No. 103,646.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 15, 2007.

Armando J. Rosell, Mulinix, Ogden, Hall, Andrews & Ludlam, P.L.L.C., Oklahoma City, OK, for Appellant.

Charles E. Geister, III, Alix Lormand Samara, Kristen O'Connor Anderson, Hartzog, Conger, Cason & Neville, Oklahoma City, OK, for Appellees.

BAY MITCHELL, Vice–Chief Judge.

¶ 1 Appellant, BancFirst, appeals from an order of the trial court in a probate proceeding that the stock of Jay Carlton Cox (Jay) in American First Abstract Company (Abstract Company) was not subject to BancFirst's judgment lien or claims.

¶ 2 The stock was a substantial asset in Jay's Estate. BancFirst was a creditor of Jay's Estate by way of a Deficiency Judgment issued in Cleveland County District Court, Case No. CJ–2004–288, styled *Countrywide Home Loans, Inc. v. Jay C. Cox, et al.* BancFirst urged the court to order the Personal Representative to take possession of the Abstract Company, liquidate the assets, and use the proceeds to satisfy the debts of the estate.

¶ 3 Appellees Harold and Geraldine Cox (Harold and Geraldine) were Jay's parents. They also maintained a claim against the Estate in the amount of $131,000.00, and contended they were entitled to possession of the stock pursuant to a demand Promissory Note, Stock Pledge Agreement and a Buy–Sell Agreement and Right of First Refusal. Pursuant to these documents, the stock would automatically revert to them upon Jay's death. The court found their claim was valid against the Estate and the stocks were not subject to BancFirst's judgment lien.

¶ 4 BancFirst contends each of these documents are unenforceable. First, BancFirst asserts Harold transferred the stock to Jay by way of an *inter vivos* gift. Second, BancFirst claims the Promissory Note is not supported by any consideration. Third, it argues the Promissory Note is unenforceable because no demand was made within the ten-year statute of limitation. Fourth, it asserts the Promissory Note and Pledge Agreement are unenforceable because they are sham documents representing a fake debt. Finally, BancFirst alleges the Buy–Sell Agreement is too ambiguous to enforce.

¶ 5 Probate proceedings are equitable in nature, and while an appellate court will examine and weigh the evidence, "the findings

and decree of the trial court cannot be disturbed unless found to be clearly against the weight of the evidence." *Estate of Bartlett,* 1984 OK 9, ¶ 4, 680 P.2d 369, 374. After reviewing the entire record, we affirm because the trial court's order was not clearly against the weight of the evidence.

¶ 6 Harold is the Chairman of the Board and CEO of the Abstract Company, which is a closely held, family corporation. On December 31, 1992, Abstract Company issued 50 shares of Class "A" Voting Stock and 54 shares of Class "B" Non–Voting stock to Jay at Harold's direction. These stocks were evidenced by Certificates No. 60 and 65. Similarly, on January 15, 1993, Abstract Company issued 414 shares of Class "B" Non–Voting stock to Jay, evidenced by Certificates No. 68 and 72. Abstract Company changed the title of the stock into Jay's name, and also changed its books and records to reflect the transfer. Both of Jay's siblings also received stock from the Abstract Company.

¶ 7 On January 15, 1993, Jay and his siblings entered into a Promissory Note, a Stock Pledge Agreement and Buy–Sell Agreement and Right of First Refusal with Harold and Geraldine. The total amount of the Promissory Note was $400,000.[1] Jay pledged all of his stock as security under the Pledge Agreement. The payment was due under the Note within thirty days of demand. Several events could trigger a demand, such as filing bankruptcy, liquidation or death of a stockholder. Jay and his parents also entered into a Buy–Sell Agreement, which provided that any stocks not fully paid for at the time of death would revert to Harold and Geraldine automatically. Jay died on January 12, 2004. Jay had not paid for any of the stock, and his parents had not made any demand for payment. They made a demand on his Estate for payment after his death.

¶ 8 BancFirst first asserts the stocks were a gift to Jay, and the Promissory Note lacked consideration and was thus unenforceable. It points to deposition testimony by Harold where he stated the stocks were gifts to Jay, and also to Harold's testimony that there was

never any money distributed to his children under the $400,000 Note Agreement.

¶ 9 The following elements are necessary to establish an *inter vivos* gift:

(1) a competent donor;

(2) freedom of will on the part of the donor;

(3) donative intent to make the gift;

(4) a donee capable of accepting the gift; and

(5) delivery by the donor and acceptance by the donee.

*Larman v. Larman,* 1999 OK 83, ¶ 8, 991 P.2d 536, 540 n. 7 (secondary citations omitted). "Additionally, the gift must be gratuitous and irrevocable and *go into immediate and absolute effect* with the donor relinquishing all control. In short, gifts require an immediately effective, unqualified and gratuitous transfer of ownership to the donee." *Id.* (secondary citations omitted).

¶ 10 Harold did state at his deposition: "There was no sale involved, this was a gift." However, he later stated in the same deposition that it was a gift with strings attached because the stocks were encumbered. Harold made it clear that the stocks were subject to the Pledge Agreement and the Promissory Note, and that he intended for the stocks to revert to the Company automatically if any of his children predeceased him. Harold's daughter, Jana Leavey, also stated in her deposition that the stocks were a gift subject to reversion and with conditions attached. The stocks were also pledged as security for the Note, and were being held by Harold pursuant to the Stock Pledge Agreement. Harold testified that the shares of stocks never left his possession. Thus, there was substantial evidence that the transfer of stocks was not gratuitous or irrevocable, and Harold lacked the necessary donative intent. The trial court's finding was not against the clear weight of the evidence.

¶ 11 Similarly, BancFirst's emphasis on the fact that no money was distributed pursuant to the Promissory Note to show there was no consideration is misplaced. Harold stated no money changed hands because *the Note was*

---

1. The court found Jay's obligation under the Promissory Note was $131,000.

**960**

*consideration for putting the stocks in Jay's name.* Thus, the Note did not lack consideration.

¶ 12 BancFirst next contends the Promissory Note is unenforceable because demand for payment was not made within the ten-year statute of limitations period. This statute provides in relevant part: "If no demand for payment is made to the maker, *an action to enforce the note* is barred if neither principal nor interest on the note has been paid for a continuous period of ten (10) years." 12A O.S.2001 § 3–118(b) (emphasis added). Harold disputes that this section would apply to the Note because it is a nonnegotiable instrument. We find it unnecessary to resolve this issue. Even if the ten-year statute of limitations applied, it would only bar an action to enforce the Note. Harold did not bring an action to enforce the note. Instead, he sought reversion of the stocks pursuant to the Buy–Sell Agreement, which is a non-judicial foreclosure.[2]

¶ 13 BancFirst further contends the documents were sham documents representing a fake debt. BancFirst's theory is that these stocks were gifts by Harold and Geraldine to their three children, and that all of the estate planning documents they had drawn up at the time of transfer that encumbered the stocks and guaranteed the stocks would remain in the control of the family in this closely held corporation were unenforceable, sham or ambiguous. We disagree. Harold's testimony that he wanted to protect the stock in his closely-held corporation from becoming marital assets in a divorce did not render them sham documents, nor did his testimony that the transfer of stock was an estate planning procedure. The debt was payable on demand, which was at the time of Jay's death. Because Jay had not previously paid the debt for the stocks, they reverted automatically to the Abstract Company pursuant to the Buy–Sell Agreement. This was neither a gift nor a sham debt that makes the documents unenforceable.

¶ 14 Finally, BancFirst asserts the Buy–Sell Agreement and Right of First Refusal is ambiguous and unenforceable. We find the Buy–Sell Agreement was plain and unambiguous as it pertained to this situation. If a stockholder died owning any stocks for which he had not fully paid, those stocks would automatically revert to Harold and Geraldine without judicial foreclosure. This provision was designed to ensure that the stocks would remain in the family in the event any of the children predeceased the parents. The court properly found that the stocks were not encumbered by any lien or judgment of BancFirst. We find no error in the trial court's ruling.[3]

¶ 15 AFFIRMED.

ADAMS, J., and JOPLIN, P.J., concur.

---

2. We do not decide whether BancFirst would have standing to raise the statute of limitations defense because we affirm on other grounds.

3. BancFirst also contends Harold's claim of $131,000, which was secured by Jay's stocks, should not be allowed as a valid claim against the Estate because the debt was not "justly due."

For the reasons stated above, we reject this argument.