AARON M. FERER, APPELLANT, V. AARON FERER & SONS CO., A NEBRASKA CORPORATION, ET AL., APPELLEES.

732 N.W.2d 667

Filed June 8, 2007.    No. S-05-730.

James D. Sherrets, Theodore R. Boecker, Jr., and Jason M. Bruno, of Sherrets & Boecker, L.L.C., for appellant.

Steven E. Achelpohl for appellee Aaron Ferer & Sons Co.

Michael A. Nelsen, of Hillman, Forman, Nelsen, Childers & McCormack, for appellees Matthew Ferer and Whitney Ferer.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

GERRARD, J.
## NATURE OF CASE
In 1995, Harvey Ferer decided to make a gift of stock in the family corporation, Aaron Ferer & Sons Co., to each of his three sons. Stock certificates and transfer documents were prepared, signed, and placed in the company safe, and corresponding notations were made in the stock record books. Before the stock certificates were presented to his sons, however, Harvey decided later in 1995 not to give any stock to one of his sons. The question presented in this appeal is whether Harvey made a completed gift of stock to that son sometime in 1995.

## STATEMENT OF FACTS
Aaron Ferer & Sons Co. (hereinafter AFSCO) is a family-owned business engaged in metals trading. Harvey, who managed

AFSCO for most of his adult life, had three sons: Aaron Ferer, Matthew Ferer, and Whitney Ferer. The appellees, Matthew and Whitney, have worked for AFSCO virtually their entire adult lives. The appellant, Aaron, worked for AFSCO until he terminated his employment on September 27, 1995.

### HARVEY'S FIRST GIFT OF STOCK
### TO HIS SONS IN 1994

In late 1994, Harvey met with Aaron, Matthew, and Whitney to discuss, among other things, the future of AFSCO. Harvey announced his plans to start making annual gifts of AFSCO stock to each of his three sons, up to the annual gifting limit. At this meeting, Harvey handed each of his sons a stock certificate representing 11,764 shares and explained that he would give a similar gift each year, so long as the sons remained actively involved in and employed at the company. At the time of this gift, all three sons were actively involved and employed at AFSCO.

### PREPARATION AND DISTRIBUTION OF 1995 STOCK
### CERTIFICATES AND STOCK POWER

On June 30, 1995, Harvey and Matthew met with two attorneys from the Erickson & Sederstrom law firm (E&S). At this time, Harvey informed one of the attorneys, Charles Sederstrom, that he was "contemplating" making a gift of stock to each of his sons for 1995, similar to the gift he made in 1994. After this meeting, pursuant to Harvey's instructions, Matthew contacted E&S and requested that stock certificates be filled out and forwarded to AFSCO.

As a result of the June 30, 1995, meeting and Matthew's request, Connie Bitzes, a legal secretary for E&S, was asked to prepare four unsigned stock certificates and an unsigned stock power. At that time, E&S maintained at its office four maroon books that contained the blank AFSCO stock certificates and stock stubs and also contained the stock stubs or receipts for AFSCO stock certificates that had previously been issued. E&S did not have any presigned stock certificates or stock powers, nor did it have a facsimile signature stamp for any of the officers or directors of AFSCO.

Accordingly, when AFSCO wanted to issue new stock certificates, an AFSCO representative would contact E&S, which would then prepare both an unsigned stock power and the unsigned stock certificates with the corresponding stock stubs. The stock certificates would be removed from the maroon books and, along with the stock power, sent to AFSCO. In addition to sending AFSCO the stock power and stock certificates, E&S would request that both the stock power and the original stock certificate, from which the gift stock originated, be returned to E&S.

The stock stubs from the newly issued stock remained in the maroon books and provided the following information: the number of shares issued on that particular stock certificate, to whom the certificate was issued, and the stock number of the original stock certificate from which the shares originated. At the time E&S prepared and issued the new stock certificate, it would mark "cancelled" on the stock stub corresponding to the original stock certificate which was the original source of the stock gift, even though the original stock certificate had not yet been returned to E&S. Once the original stock certificate and the signed stock power were returned, E&S would attach the stock power and stock certificate to the corresponding stock stub in one of the maroon books.

Consistent with the above-described procedure, and in accordance with Matthew's request, E&S sent a letter addressed to Matthew, dated July 6, 1995, attached to which was an unsigned stock power and four unsigned stock certificates. Bitzes testified that although the date on the stock certificates and the stock power was February 2, 1995, neither the stock power nor the certificates were in existence on that date, but were actually prepared by her on July 6, 1995. Bitzes further testified that although she had not yet received Harvey's original stock certificates, she marked "cancelled" on the stock stubs in the maroon books.

The July 6, 1995, letter explained that the issuance of the four stock certificates had been noted in "the stock record book" (the four maroon books). The letter also directed Harvey to return his original stock certificate so that it could be canceled. It was necessary that Harvey's original stock certificate be

returned and canceled because Harvey's original certificate was the source from which he was going to be giving his sons their gifts of stock. The letter further instructed Harvey to sign and return the enclosed stock power. The stock power stated:

> FOR VALUE RECEIVED, the undersigned hereby assigns and transfers by gift unto Matthew D. Ferer 11,764 shares, Aaron M. Ferer 11,764 shares and Whitney H. Ferer 11,764 shares of the common capital stock of Aaron Ferer & Sons Co., a Nebraska corporation, standing in the name of Harvey D. Ferer on the books of said corporation represented by certificate No. 0460. The undersigned does hereby irrevocably constitute and appoint the Secretary of the corporation as attorney to transfer the stock on the books of the corporation with full power of substitution in the premises.

> Dated this 2nd day of February, 1995.

> _____
> Harvey D. Ferer

Matthew received the unsigned stock certificates, showed them to Harvey, and then, pursuant to Harvey's instructions, acquired the necessary signatures on the stock certificates and locked them in the company safe.

### AARON QUITS AFSCO

In approximately 1993, Aaron began expressing his dissatisfaction with his employment at AFSCO. During this period of time, Aaron frequently voiced his complaints and his desire to leave the company in the presence of Harvey, Matthew, and Whitney. On September 27, 1995, Aaron terminated his employment with AFSCO.

### RETURN OF ITEMS AND CANCELLATION OF STOCK CERTIFICATE

In late September or early October 1995, Matthew and Harvey again met with Sederstrom. Both Sederstrom and Matthew testified that during this meeting, Harvey specifically told Sederstrom that he was not going to be making any gifts of stock to Aaron for 1995 because Aaron no longer worked for AFSCO. Sederstrom told Harvey that if he was not going to be giving Aaron the gift of stock, then Harvey needed to return

to E&S his original stock certificate and the new stock certificates and stock power that had been sent to him. Harvey told Sederstrom that he would return these items to E&S.

Matthew testified that in late 1995 or early 1996, Harvey told him and Whitney that Aaron would not be receiving a stock gift for 1995 and that Matthew should return the stock certificate that had been drawn up in Aaron's name to E&S. Accordingly, on January 17, 1996, Matthew sent to E&S the certificate and a letter requesting that the certificate be canceled and reissued in Harvey's name. The letter explained that the certificate should be canceled and reissued, as the stock had not been gifted to Aaron because Aaron had left the company. Upon receiving the stock certificate and the letter, E&S stamped "cancelled" on the certificate, placed it in one of the four maroon books, and reissued the shares back to Harvey.

The record is clear that the stock certificate was returned to E&S on January 17, 1996. However, the record is less clear as to when Harvey's stock power and original stock certificate were returned to E&S. Bitzes testified that she did not know when these items were eventually returned, but testified that when they were returned, they were placed in the maroon books. In this regard, Sederstrom testified that although he did not know the exact date that the stock power and original stock certificate were returned, the items could have come back at anytime between October 1995, when he told Harvey to return the items, and January 17, 1996, the date of Matthew's letter requesting the cancellation of the certificate in Aaron's name.

### Harvey's Desire That Stock Remain With Family Members Engaged in Business

A substantial amount of evidence was presented at trial relating to Harvey's alleged desire that AFSCO stock be held only by family members who are actively employed in the business. Matthew testified that from 1986 to 1995, Harvey had expressed at various times to Aaron, Matthew, and Whitney that the only way they would receive stock from Harvey would be if they were actively employed and involved in the company. Aaron testified that he was aware of Harvey's "general philosophy" that if one of them was not actively working at the

company, they would not get a gift of stock, but claims that this was not "a hard and fast rule."

Harvey's will, which was executed in 1994, provided that Aaron would not inherit any AFSCO shares if he was not a "full-time employee" of AFSCO at the time of Harvey's death. Whitney also testified that on at least two occasions in August or September 1995, Aaron made comments to him to the effect that Matthew and Whitney should be happy that he was leaving the company because that would mean they would get all of Harvey's stock. Matthew testified that in November 1995, he was having dinner at Harvey's house with Harvey and Aaron. Matthew testified that Harvey specifically told Aaron that he would not be receiving a gift of stock for 1995 because he had left the company. Aaron denies that this dinner meeting ever occurred.

### Gifts of Stock Given to Matthew and Whitney in 1995 Through 1998

In late 1995, or early 1996, Harvey met with Matthew and Whitney and gave each of them a stock certificate. Harvey explained that this was the second of his stock gifts to them and that Aaron would not be receiving a stock gift.

In his 1995 gift tax return filed with the Internal Revenue Service (IRS), Harvey reported giving only two gifts of stock for 1995, one gift to Matthew and the other to Whitney. The tax return reports no gift of stock to Aaron. Following these gifts, Harvey gave equal stock gifts to Matthew and Whitney in 1996 through 1998, at which point, all of his stock in AFSCO had been given away. Harvey died on August 29, 2001.

### Complaint and District Court Decision

Aaron's operative complaint, filed on October 27, 2003, against AFSCO, Matthew, and Whitney (collectively the appellees), alleges that a gift was made by Harvey to Aaron in 1995 for 11,764 shares of AFSCO stock. From this allegation, Aaron asserted five claims: (1) a declaratory judgment determining that the stock certificate prepared in his name and the entries made on the books of E&S constituted a completed gift; (2) the creation of a constructive trust in favor of Aaron;

(3) a finding of a breach of fiduciary duty against Matthew and Whitney and request for the fair value of his claimed stock interest, distributions with respect to the stock, and other damages; (4) a finding of wrongful registration of the stock in the names of Matthew and Whitney; and (5) unjust enrichment and related remedies.

The appellees denied all of the material allegations in Aaron's complaint and alternatively alleged that no gift had occurred for failure of delivery, acceptance, and no donative intent on the part of Harvey; that the gift was also not completed for failure of a condition; and that Aaron's claims are barred by equitable estoppel, laches, the statute of limitations, and unclean hands.

The district court found that Harvey's actions did not constitute a completed gift to Aaron. Accordingly, the court determined that neither Matthew nor Whitney had breached his fiduciary duty. The court further concluded that Aaron's claims are barred by the statute of limitations, laches, and equitable estoppel. Aaron appealed.

## ASSIGNMENTS OF ERROR

On appeal, Aaron assigns, summarized, restated, and renumbered, that the district court erred in (1) failing to find that Harvey made a valid completed gift to Aaron; (2) refusing to grant a declaratory judgment in favor of Aaron finding that he is the legal and/or equitable owner of the stocks at issue in this case; (3) failing to impose a constructive trust on the appellees for fraudulently concealing the cancellation of the stocks which he claims belonged to him; (4) failing to conclude that the appellees breached their fiduciary duties to Aaron; (5) failing to find that the appellees were unjustly enriched; (6) receiving, over Aaron's objection, leading testimony on cross-examination of favorable witnesses to the appellees and refusing to strike such testimony; (7) finding Aaron's claims to be barred by the statute of limitations, laches, and equitable estoppel; and (8) referring to Harvey as "the rightful defendant" in its order.

## STANDARD OF REVIEW

In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where

credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[1]

## ANALYSIS

■ The primary issue presented in this case is whether Harvey made a valid inter vivos gift of AFSCO stock to Aaron in 1995. To make a valid and effective gift inter vivos, there must be an intention to transfer title to the property, and a delivery by the donor and acceptance by the donee.[2] The person asserting the gift must prove all the essential elements by clear, direct, positive, express, and unambiguous evidence.[3]

■ We begin our analysis by addressing the question whether Harvey had the required present donative intent to make a gift of stock to Aaron. One of the essential elements of a gift is the intention to make it.[4] A clear and unmistakable intention on the part of the donor to make a gift of his or her property is an essential element of the gift, and this contention must be inconsistent with any other theory.[5] It is well established that to constitute a valid inter vivos gift, the donor must have a present donative intent.[6] The "mere preparation of a donative document does not effect a present transfer necessary to perfect a gift."[7] Where the intention to make a gift is not

---

[1] *Ottaco Acceptance, Inc. v. Huntzinger*, 268 Neb. 258, 682 N.W.2d 232 (2004).

[2] *In re Estate of Lamplaugh*, 270 Neb. 941, 708 N.W.2d 645 (2006).

[3] *Masonic Temple Craft v. Stamm*, 152 Neb. 604, 42 N.W.2d 178 (1950).

[4] *In re Estate of Lamplaugh, supra* note 2.

[5] *Id.*

[6] See *Masonic Temple Craft v. Stamm, supra* note 3. See, also, *Schultz v. Schultz*, 637 S.W.2d 1 (Mo. 1982); *Matter of Estate of Lewis*, 97 Idaho 299, 543 P.2d 852 (1975); *Sinclair v. Travis*, 231 N.C. 345, 57 S.E.2d 394 (1950); *Rock v. Rock*, 309 Mass. 44, 33 N.E.2d 973 (1941); *Millman v. Streeter*, 66 R.I. 341, 19 A.2d 254 (1941); *Myers v. Weems*, 128 Or. App. 444, 876 P.2d 861 (1994); *Sullivan v. American Telephone & Telegraph Co.*, 230 So. 2d 18 (Fla. App. 1969).

[7] Restatement (Third) of Property: Wills and Other Donative Transfers § 6.2, comment *u.* at 51 (2003).

clearly manifested, subsequent acts may aid in clarifying that intention.[8]

Aaron argues that the February 2, 1995, stock power, prepared by E&S at Harvey's request, sufficiently establishes Harvey's donative intent to make a gift of stock to Aaron in 1995. Aaron notes that the stock power, which was eventually signed and returned by Harvey to E&S, states that Harvey "assigns and transfers by gift unto . . . Aaron M. Ferer 11,764 shares" and uses the term "irrevocably" in describing the transfer. Aaron asserts that given this language and Harvey's signature on the document, the element of donative intent has been satisfied. We are not persuaded by Aaron's argument. We find, as did the district court, that Harvey lacked the requisite donative intent to make a present gift of stock to Aaron.

The record evidences conduct on Harvey's part that is entirely inconsistent with the present donative intent required to make a valid completed gift inter vivos. Both Sederstrom and Matthew testified that the unsigned stock power and unsigned stock certificates were prepared in July 1995, by E&S, because Harvey was "contemplating" making a gift of stock to each of his sons. After receiving the stock certificates and having them signed, Harvey, rather than presenting the certificates to his sons, or at least informing them that a gift had been made, directed that the certificates be locked in the company safe. This evidence indicates that at the time the stock power and certificates were prepared, Harvey did not intend to make a present gift of stock to his sons and, instead, intended to maintain dominion and control over the certificates.

Also relevant to the question of Harvey's donative intent is the evidence relating to Harvey's desire that stock in AFSCO be given only to family members who are actively employed in the company. Between 1986 to 1995, Harvey had repeatedly expressed that the only way Aaron, Matthew, and Whitney would receive stock would be if they were actively employed and involved in the company. Aaron testified that he was aware

---

[8] See *Crowell v. Milligan*, 157 Neb. 127, 59 N.W.2d 346 (1953), *overruled in part on other grounds, White v. Ogier*, 175 Neb. 883, 125 N.W.2d 68 (1963).

of this "general philosophy." In addition, the provisions in Harvey's 1994 will are persuasive evidence of Harvey's intent that Aaron should not receive AFSCO stock if he was not employed with the company.

The record further shows that following Aaron's decision to leave the company, Harvey told several individuals, including Aaron, that he was not going to be giving a gift of stock to Aaron in 1995 because Aaron had left the company. These statements by Harvey are significant because they demonstrate that at the time the statements were made, Harvey was not under the impression that he had already made a completed gift of stock to Aaron. Harvey's statements do not suggest a desire to revoke or undo a gift that he believed had already been given. Rather, these statements evidence Harvey's intent to forgo a gift of stock to Aaron in the future that would have otherwise been made. And Harvey could not have believed the gift to be incomplete had he intended to complete it earlier.

Aaron suggests that the fact that the stock power was signed and returned to E&S conclusively establishes Harvey's donative intent to make a gift. However, the evidence shows that Harvey did not return the signed stock power to E&S until after he had specifically told Sederstrom that he was not going to be making a gift of stock to Aaron in 1995. Moreover, Sederstrom testified he told Harvey that if Harvey was not going to be giving the gift of stock to Aaron, then Harvey needed to return to E&S, among other things, the stock power; and that is exactly what Harvey did.

Furthermore, the record contained two gift tax returns prepared by Harvey for 1995. One return reported a gift of stock to all three of his sons, while the other return reported only a gift of stock to Matthew and Whitney. The evidence presented at trial showed that the tax return reporting a gift to all three sons was only a draft, prepared by Harvey in early 1995, and was never signed by Harvey. The undisputed evidence was that the actual gift tax return, signed by Harvey and filed with the IRS for 1995, was the gift tax return reporting that a gift had been made only to Matthew and Whitney, and not Aaron.

Finally, the record indicates a pattern of gift giving followed by Harvey, both before and after Aaron left the company. In

late 1994, while all three of his sons were working at AFSCO, Harvey gave each of them a stock certificate and explained that a similar gift would be made each year, so long as the sons remained actively employed and involved in the company. The following year, in late 1995 or early 1996, consistent with what he had done the year before, Harvey gave Matthew and Whitney, but not Aaron, gifts of stock for 1995. Harvey gave similar gifts of stock to Whitney and Matthew in 1996 through 1998, at which point, all of Harvey's stock in AFSCO had been given away. Harvey's established pattern of giving his sons annual gifts of stock at the end of the year, or the beginning of the next year, further supports our determination that Harvey did not have a present intent to convey an interest in the stock to Aaron in July 1995, when the stock power and certificates were prepared.

In sum, when considering the foregoing evidence, it is apparent that at no time in 1995, either before or after Aaron left AFSCO, did Harvey have a clear and unmistakable intent to make a present gift of stock to Aaron. There is no evidence in the record that Harvey, at any time other than the 1994 gift, believed that he had completed a gift of AFSCO stock to Aaron. Rather, the evidence at best reveals that Harvey intended to make a gift of stock to Aaron at some point in the future. However, the law is well established that the mere intention to make a gift in the future is insufficient to constitute a completed gift.[9] Accordingly, Aaron has failed to carry his burden of showing that Harvey made a completed gift of stock to him in 1995.

Aaron argues that Harvey's alleged 1995 gift was complete and irrevocable when the transfers were noted by E&S in the maroon books. Assuming without deciding that the maroon books were the official stock records of AFSCO and that recording the transfer in those books could constitute constructive delivery, we nonetheless conclude that the gift was defeated by Harvey's lack of a present donative intent.

---

[9] See, *Tucker v. Addison*, 265 Ga. 642, 458 S.E.2d 653 (1995); *Fuisz v. Fuisz*, 527 Pa. 348, 591 A.2d 1047 (1991); *Figuers v. Sherrell*, 181 Tenn. 87, 178 S.W.2d 629 (1944); *In re Estate of Shivers*, 105 N.J. Super. 242, 251 A.2d 771 (1969); *Harmon v. Schmitz*, 26 S.W.2d 289 (Tex. Civ. App. 1930).

The Oklahoma Supreme Court in *Davis v. National Bank of Tulsa*[10] addressed a situation very similar to the one presented in this case. In *Davis*, a father reissued 80,000 shares of his stock, with 20,000 shares being issued in the names of each of his children. There was no evidence in the record that the stock certificates had been delivered to the children, or to anyone on their behalf. The father retained exclusive possession and control of the stock certificates and the proceeds of sales thereof for many years.

In determining that the father had not made a valid gift inter vivos to his children, the court stated that "'[i]t is elementary that a gift cannot be made to take effect in possession in futuro'" and that "'[s]uch a transaction amounts only to a promise to make a gift,'" and is not legally enforceable.[11] The court continued, "'[t]he fact that the stock was registered upon the books of the corporation in the names of the plaintiffs, in the light of all the facts in this case, is not sufficient to establish a completed gift.'"[12] The court concluded by explaining that the father had "retained possession, control and dominion over the stock and the proceeds of the sale thereof. There was never a completed gift. The most that may be said of the facts and circumstances is that [the father] evidenced an intent to make a gift in the future."[13]

Courts in other jurisdictions have similarly concluded that notwithstanding the fact that a stock transfer has been recorded on the books of the company, if there is a lack of donative intent, the gift of stock will not be considered valid.[14] We agree. In this case, Harvey never had the present intent to convey an interest in the stock to Aaron. Therefore, we reject

---

[10] *Davis v. National Bank of Tulsa*, 353 P.2d 482 (Okla. 1960).

[11] *Id.* at 487.

[12] *Id.*

[13] *Id.* at 488.

[14] See, *Owens v. Owens*, 207 Minn. 489, 292 N.W. 89 (1940); *Lichtenstein v. Eljohnan, Inc.*, 161 A.D.2d 397, 555 N.Y.S.2d 331 (1990); *Sullivan v. American Telephone & Telegraph Co., supra* note 6; *Nolan v. American Tel. & Tel. Co.*, 326 Ill. App. 328, 61 N.E.2d 876 (1945).

Aaron's claim that Harvey made a completed gift of stock to him in 1995.

Aaron also assigns error to the admissibility of certain portions of Bitzes' testimony. Aaron argues that the district court erred in allowing, over his objection, opposing counsel to lead favorable witnesses through their examinations. Specifically, Aaron contends that Bitzes was "spoon-fed answers with leading questions" and that her testimony was "dramatically different than her sworn deposition testimony."[15] Given the broad discretion allowed to a trial court in permitting or refusing a request to ask leading questions, and having reviewed the testimony at issue, we find that the trial court did not abuse its discretion.[16]

Our conclusion that Harvey did not make a valid inter vivos gift of stock to Aaron in 1995 is otherwise dispositive of this appeal. We need not, and do not, address Aaron's remaining assignments of error.

## CONCLUSION

We conclude that Harvey did not make a gift of stock in 1995 to Aaron because Harvey lacked the requisite donative intent to make a present gift of stock to Aaron. Furthermore, the district court did not abuse its discretion in overruling Aaron's objections and allowing the testimony of Bitzes. The judgment of the district court is affirmed.

AFFIRMED.

McCORMACK, J., not participating.

---

[15] Brief for appellant at 40.

[16] See *Turner v. Welliver*, 226 Neb. 275, 411 N.W.2d 298 (1987).