**Supreme Court**

No. 2013-216-Appeal.
(PC 08-1467)
No. 2013-217-Appeal.
(PC 08-6628)
No. 2013-220-Appeal.
(PC 08-1467)

Barbara A. Voccola and Edward R.     :
Voccola, in their capacities as Co-
Executors of the Estate of Edward E.
Voccola

v.               :

Patricia A. Forte et al.     :


NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2013-216-Appeal.
(PC 08-1467)
No. 2013-217-Appeal.
(PC 08-6628)
No. 2013-220-Appeal.
(PC 08-1467)

Barbara A. Voccola and Edward R.      :
Voccola, in their capacities as Co-
Executors of the Estate of Edward E.
Voccola

v.                :

Patricia A. Forte et al.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.** Patricia Forte and Red Fox Realty, LLC (Red Fox) (the defendants) appeal from a March 12, 2013 final judgment entered in two consolidated Providence County Superior Court actions in favor of Barbara Voccola and Edward R. Voccola, in their capacities as co-executors of the Estate of Edward E. Voccola (the plaintiffs).[1] In these actions, filed on March 12, 2008 and October 17, 2008, Edward E. Voccola[2] sought to recover

---

[1]    These actions were commenced by Edward E. Voccola, who passed away on June 25, 2010, during the pendency of the actions. Marvin Homonoff, as the temporary custodian of Edward E. Voccola's estate, was the named plaintiff at the time of trial. According to the docket sheet, on March 12, 2013, after the trial, Barbara Voccola and Edward R. Voccola were substituted as plaintiffs in their representative capacities. See Rule 25(a) of the Superior Court Rules of Civil Procedure. We shall refer to Barbara Voccola and Edward R. Voccola as if they have been plaintiffs to these actions since their inception.

[2]    For the sake of clarity, Edward E. Voccola will henceforth be referred to in this opinion as Mr. Voccola. His children—Barbara Voccola, Edward R. Voccola, Patricia Forte, Stephen Voccola, and Paul Voccola—will henceforth be referred to by their first names. In so doing, we intend no disrespect.

his property which he alleged Patricia had wrongfully transferred. On appeal, the defendants contend as follows: (1) that the trial justice erred when she held that Mr. Voccola's signatures authorizing the transfer of the properties at issue to Patricia's company, Red Fox, were not genuine because, according to the defendants, the plaintiffs failed to present sufficient evidence to rebut the presumption that Mr. Voccola's signatures were genuine; (2) that the trial justice erred as a matter of law in using "her independent analysis and opinion" of Mr. Voccola's signatures as a basis for concluding that his signatures on the documents at issue were not authentic; (3) that the trial justice erred in refusing to admit into evidence testimony concerning two of the documents at issue; (4) that the trial justice erred in finding the defendants' handwriting expert not to be credible; (5) that this Court should review the testimony of the plaintiffs' handwriting expert de novo and then reject her credibility; (6) that the trial justice erred as a matter of law when she held that the omission of a referenced exhibit to the documents which Mr. Voccola allegedly signed allowing the transfer of the properties at issue rendered those documents legally ineffective; and (7) that the trial justice erred in holding in the plaintiffs' favor on the defendants' claim that Mr. Voccola gifted the properties at issue to Patricia.

The plaintiffs filed a cross-appeal from the decision of the trial justice awarding Patricia $82,000 pursuant to her counterclaim. They contend on appeal that the trial justice erred in making that award because: (1) in her counterclaim, Patricia did not seek reimbursement for paying Mr. Voccola's criminal fines, which payment was the act that formed the basis of the trial justice's $82,000 award; and (2) any "claim of damages as to the criminal fines" was settled in a 2007 Settlement Agreement between various parties, including Mr. Voccola and Patricia.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

This case is, at its core, a family dispute involving Mr. Voccola and his five adult children—Edward, Stephen, Paul, Barbara, and Patricia. On July 11, 2012, prior to trial, the parties entered into an Agreed Statement of Facts. That document establishes the following facts. Mr. Voccola was the sole shareholder of three Rhode Island corporations—Capital City Investments, Inc. (CCI), City View Realty, Inc. (CVR), and West Side Investments, Inc. (WSI). Patricia was the President of all three corporations at the times at issue in this case. Patricia was also the sole member and manager of Red Fox. In 2005, Mr. Voccola filed suit in Providence County Superior Court against Stephen and Barbara seeking to revoke a purported gift of stock in a corporation called Redbrook Investments, Inc. (Redbrook). In March of 2007, a Settlement Agreement, occasioned by Mr. Voccola's suit against Stephen and Barbara, was executed by Mr. Voccola, Barbara, Stephen, Paul, and Patricia. The action commenced by Mr. Voccola against Barbara and Stephen was subsequently dismissed by stipulation. The Settlement Agreement, which was entered as an exhibit at trial, stated in relevant part as follows: "[Patricia, Stephen, Paul, and Barbara] agree forthwith upon the signing of this agreement to discharge and/or release all mortgages and promissory notes which reference [Mr. Voccola], Jere Realty, Inc., Lakeview Realty, Inc., [CCI, WSI, and/or CVR]."

According to the Agreed Statement of Facts, on or about June 4, 2007, "three documents were signed purporting to be Waivers of Notice of Minutes of a Special Joint Meetings [sic] of the Stockholders and Board of Directors of [CCI, CVR, and WSI] respectively" (hereinafter the CCI waiver, the CVR waiver, and the WSI waiver, or the waivers collectively). Those waivers purported to memorialize a meeting and vote that allegedly took place on May 29, 2007 and are

all supposedly signed by Mr. Voccola. On May 31, 2007, pursuant to the waivers to be signed a few days later, Patricia, as President of CCI, CVR, and WSI, signed three warranty deeds conveying the real estate of all three of those corporations to Red Fox.[3] The waivers, which were entered as exhibits at trial, all state that the transfer of property was "in exchange for the assumption of the two mortgages on the property." At the time of the supposed May 29 meeting, at the time of the purported signing of the waivers, and at the time of the transfer of the properties, Patricia still held undischarged mortgages on properties owned by Mr. Voccola or by one of his corporations.

In his verified complaint, Mr. Voccola alleged that his signature on the WSI waiver had been forged and that the warranty deeds were therefore void. He further stated that the warranty deeds were also void because they were not supported by adequate consideration. The validity of Mr. Voccola's signatures on the waivers and the corresponding conveyance of the properties at issue was the major factual issue to be resolved at trial,[4] and it forms the basis of this appeal. The defendants also filed a counterclaim seeking "reimbursement for all sums expended [by the defendants] for taxes, maintenance, insurance and other charges on the properties which are the subject of [the] action," which is also an issue on appeal.

---

[3] It should be noted that, according to the Agreed Statement of Facts, Red Fox was not officially organized as a corporation until June 1, 2007.

[4] As the final judgment in these actions reflects, one of the actions in Superior Court, PC 08-6628, was brought to enforce the terms of the 2007 Settlement Agreement requiring Patricia to discharge mortgages she held on certain properties owned by Mr. Voccola or one of his corporations. The other action, PC 08-1467, was brought to recover the property which Patricia transferred to Red Fox pursuant to the purported signatures of Mr. Voccola on the waivers approving the transfer. The parties limit themselves on appeal to an argument with respect to the transfer of the properties at issue, which was the subject of PC 08-1467, and we shall likewise do the same. As such, we shall discuss the Settlement Agreement only as it is relevant to this appeal.

A bench trial was conducted over seven days in July of 2012. We relate below the salient aspects of what transpired at trial.

## A

## The Trial Testimony[5]

### 1. The Testimony of Paul Voccola

Paul Voccola testified that Mr. Voccola and Patricia had "the best relationship between father and daughter that you can imagine for * * * a good 25, 30 years." He further testified that Mr. Voccola said that "Patricia was the only one in his life that has ever done anything for him and that he was leaving all his property to her." By contrast, when asked about his father's relationship with Edward, Paul stated: "Well, for the past 35 years or so, there was actually no relationship at all." He added that "they were not on speaking terms." Moving on to the relationship between Barbara and Mr. Voccola, Paul testified that they had a contentious relationship due to what Paul claimed was the fact that Mr. Voccola gave "all the attention to his mistress's daughter," who was the same age as Barbara. He added that Barbara "really hated [Mr. Voccola] * * * through her whole life because of it."

Paul indicated in his testimony that the signature on all three waivers was his father's signature, but he also stated that he was not present when those waivers were signed. He further stated that it was his understanding that under the 2007 Settlement Agreement "various mortgages" "were supposed to be released." He also acknowledged that, in his role as a licensed

---

[5]      It is important to note that the Agreed Statement of Facts provided as follows with respect to the testimony at trial:

> "The parties agree that all discussions by and between [Mr. Voccola] and any of his children relating in any way to the above matters shall not be deemed to be hearsay but shall be accepted into evidence by this Court and given the weight that this Court deems appropriate."

real estate broker, he had received the "listing" for two properties from Patricia during the pendency of the instant case.

## 2. The Testimony of Patricia Forte

Patricia testified that she opened a business named West Fountain Auto Body and Sales, Inc. (West Fountain) in June of 1997. It was her testimony that her boyfriend, Kenneth Salvatore, was the general manager of West Fountain.

Patricia acknowledged during her testimony that she signed the Settlement Agreement because her brother, Stephen, told her to sign it. However, she testified that she did not read the document before she signed it. She further stated that, at the time of trial, she understood that she was required, under the Settlement Agreement, to release mortgages "held by [her] or Redbrook given by [her] father." She stated that, when she realized that she was supposed to release the mortgages, she did not do so because her "father told [her] not to release them" due to the fact that he intended to "give [her] the property anyway." She did acknowledge in her testimony that she held mortgages from her father, CVR, CCI, and WSI which had not been discharged at the time of the transfer of the properties at issue in this appeal.

With respect to a mortgage which her father gave to one Joe Tosoni, Patricia testified that her father was motivated to give the mortgage to Mr. Tosoni so as to obtain the money that he needed to pay some criminal fines. It was her further testimony that she "believe[d]" that she paid Mr. Tosoni $82,000 on her father's behalf and that Mr. Tosoni was, thus, "paid in full." She added that the mortgage was assigned to her and had not been released. When Patricia was asked at trial where she obtained the money to pay Mr. Tosoni she stated: "I think that was when I took the mortgage out on my house * * *." The mortgage deed given by Mr. Voccola to Mr.

- 6 -

Tosoni and the Assignment of Mortgage from Mr. Tosoni to Patricia were both entered as exhibits at the trial.

Patricia's testimony then turned to the day on which her father purportedly signed the waivers. She stated that, on June 4, 2007, Mr. Voccola came to West Fountain, as he did every day, and that on that day he told her he was "going to sign the property over to [her]." She testified that on that day she saw her father read (or have read to him) all three of the waivers and she saw him sign all three waivers. She further stated that she, Raphael Fernandez, Mr. Salvatore, and an individual by the name of James Levitt, who prepared the waivers, were present when the waivers were signed. She specifically identified her father's signature on each of the waivers at trial. Patricia added that the Exhibit A referenced in the waivers was not attached to them and she had not, at the time of trial, located Exhibit A.

It was Patricia's further testimony that she executed the warranty deeds transferring the properties at issue from CVR, CCI, and WSI to Red Fox in her capacity as President of CVR, CCI, and WSI. According to her testimony, her father told her "on a million occasions" that she was getting all of his property, and she said that she remained close to him until his death, despite the instant actions. She indicated that he had conflicts with his other children. However, she did read a portion of her father's 2008 will at trial, which provided that she would not inherit since she would be deemed to have predeceased her father unless she transferred back to him the properties conveyed to Red Fox.

A videotape of a will signing from January of 2004 was played before the jury at trial. In the video, Mr. Voccola was seen signing his January 2, 2004 will; and, in the course of the videotape, he disparaged each of his children, with the exception of Patricia. The videotape revealed him stating that "Patricia [was] going to be the sole owner of everything."

### 3. The Testimony of Barbara Voccola

Barbara Voccola testified that in December of 2007 her father tried to obtain from Patricia "all his corporate records" regarding his properties, but that Patricia resisted providing them for several weeks. She stated that it was only by being told by Paul that Mr. Voccola found out that Patricia had transferred his properties to Red Fox. It was Barbara's further testimony that Mr. Voccola asked Patricia to "give him back all his property" and that, when she did not do so, Mr. Voccola retained an attorney to commence litigation against Patricia. Barbara stated in her testimony that her father knew that "his property had been illegally transferred." It was her testimony on cross-examination that she had an "on and off relationship" with her father "over the years." It was additionally her testimony that Patricia was not involved in her father's care in late 2009 and 2010, nor did she visit him on a regular basis.

### 4. The Videotaped Deposition of Pauline Patchis

Pauline Patchis was plaintiffs' handwriting expert. Her videotaped deposition in relation to Mr. Voccola's purported signature on the WSI waiver was played for the jury at trial due to her unavailability. According to the trial justice's written decision, Ms. Patchis testified at deposition that, in her expert opinion, the waivers were signed by someone other than Mr. Voccola.

### 5. The Testimony of Dr. Marc Seifer

Marc Seifer, Ph.D. was defendants' handwriting expert. He testified at trial concerning the WSI waiver.[6] After discussing in detail his process of analyzing a signature, Dr. Seifer

---

[6] Doctor Seifer was restricted by the trial justice to testifying with respect to only Mr. Voccola's signature on the WSI waiver; thus, he did not testify about the signatures on the CVR and CCI waivers. His testimony was so restricted because defendants had failed to update their answers to interrogatories to indicate that Dr. Seifer would be testifying about the CVR and CCI waivers and not simply about the WSI waiver. We are aware that it was conceded that plaintiffs

concluded that in his expert opinion Mr. Voccola signed the WSI waiver. During the course of his testimony, he was critical of Ms. Patchis's report.

Additionally, on cross-examination, Dr. Seifer responded in the affirmative when he was asked: "[A]t the time you were studying [Ms. Patchis's] conclusion, you had already formed the opinion that she was wrong and the signature was actually Mr. Voccola's?"

### 6. The Testimony of Stephen Voccola

Stephen Voccola testified that his relationship with his father became "adversarial" after his father commenced the 2005 litigation in which he was named as a defendant. However, he testified that their relationship was mended in 2007. He stated that he was an attorney and that, before the instant suit commenced, his father asked him "if [he] would represent him to sue Patricia to get the property he had given her back;" it was Stephen's testimony that he declined his father's request. It was further his testimony that in 2010 his father complained to him that Barbara and Edward were "constantly badgering him to transfer property into their name" and were threatening to put him in a nursing home. However, Stephen acknowledged on cross-examination that he had recently filed his own lawsuit against Barbara and Edward concerning the pour-over trust set up in Mr. Voccola's will.

Stephen testified that his father's signatures on all three waivers were genuine. He specifically stated with respect to all of the waivers that his belief that the signatures were genuine was "without equivocation."

### 7. The Testimony of Raphael Fernandez

Raphael Fernandez testified that he owned an auto repair business which had operated out of the same location as West Fountain and that he was permitted to use one of the automobile

---

were given copies and made aware of the CVR and CCI waivers themselves at least nine months prior to trial.

bays in the West Fountain building. He testified that on a day in June of 2007 he had spoken with Mr. Voccola, who indicated that he was signing all of his property over to Patricia that day. It was his further testimony that on that day he saw Mr. Voccola read several papers, have them read to him, and ultimately sign them. However, Mr. Fernandez stated that he did not recall whether Mr. Voccola signed one or several documents. He acknowledged on recross-examination that Patricia had given Mr. Salvatore and him a ride to the courthouse on the morning of that trial day.

### 8. The Testimony of Kenneth Salvatore

Kenneth Salvatore testified that he was the general manager at West Fountain. It was his further testimony that he was present at the June 4, 2007 meeting at West Fountain, at which meeting Patricia and Mr. Voccola were in attendance. He testified that Mr. Voccola stated that he was signing his property over to Patricia. Mr. Salvatore further stated that he saw Mr. Voccola sign the documents, although he said that he was not sure exactly how many documents there were. Mr. Salvatore acknowledged on cross-examination that he had been living with Patricia since 1996 or 1997.

### 9. The Testimony of Edward R. Voccola

Edward R. Voccola testified that his relationship with his father become close in 2004; he stated that it was a "turning point" in his relationship with his father. He further testified that his father's motivation to sign the Settlement Agreement in 2007 was to "get [the] liens off" his property. According to Edward's testimony, in January of 2008, Mr. Voccola told him that Patricia had told Mr. Voccola that he no longer owned most of his properties. Edward also testified that he reviewed the WSI waiver with his father and that his father stated that he "never

signed any document, nor had any discussion concerning anything like [the] transaction [represented in the waiver]."

**B**

**The Superior Court Decision**

In January of 2013, the trial justice issued a thorough and well-articulated written decision. Initially, the trial justice found that the Settlement Agreement was the product of mutuality of assent and was supported by adequate consideration. She gave no weight to Patricia's statement that she did not read the Settlement Agreement but rather determined that Patricia "intended to be bound by the Settlement Agreement." The trial justice went on to state, with respect to Patricia, as follows: "[She] was a party to the Settlement Agreement and was therefore legally obligated to perform under its terms, which required her to release the mortgages [on Mr. Voccola's properties]." Thus, it was the trial justice's holding that "[t]he mortgages should have been discharged effective as of the date of the Settlement Agreement" and that "any subsequent conveyance of property to [Patricia], which was performed in exchange for [Patricia's] release of mortgages on those properties, was done without consideration."

With respect to the validity of Mr. Voccola's signatures on the waivers, the trial justice found that Mr. Fernandez and Mr. Salvatore were "biased" due to their close relationship with Patricia, and she gave their testimony "little weight." She did, however, find credible Stephen's testimony about his father's intent to recover the properties. Moreover, the trial justice accepted the testimony of Ms. Patchis, and she found that Mr. Voccola did not sign the WSI waiver. She gave little weight to Paul and Stephen's testimony that the signatures on the waivers were their father's due to the "divisive nature of the relationship of the siblings," Paul's economic interest, as a real estate broker, in Patricia's success in the case, and Stephen's lawsuit against Barbara

and Edward. Additionally, the trial justice did not find Dr. Seifer's testimony to be credible, stating that he reached a conclusion on the validity of the signature before he prepared his report. The trial justice then proceeded to conduct her own analysis of the signatures at issue to determine their authenticity, and she concluded that they were not Mr. Voccola's signatures. Accordingly, she declared the deeds transferring Mr. Voccola's properties from CCI, CVR, and WSI to Red Fox to be null and void.

The trial justice also found that Patricia, as President of CCI, CVR, and WSI, breached her fiduciary duties by engaging in self-dealing when she transferred the properties at issue to her own company for no consideration. It was then her further ruling that the omission of exhibits (i.e., Exhibit A) to the waivers, which exhibits purported to describe the properties in question, rendered her unable to determine what transactions, if any, were allegedly approved at the purported May 29, 2007 meeting.

In the next section of her analysis, the trial justice rejected Patricia's argument that the conveyance of the properties was a gift, finding no credible evidence that Mr. Voccola possessed a donative intent or that a delivery of the properties took place. In concluding that there was no donative intent the trial justice pointed to: (1) the fact that Mr. Voccola did not sign the waivers; (2) his attempts to sue Patricia to force her to return the properties; and (3) the intent manifest in his later estate plan (i.e., the 2008 will that Patricia read into the record at trial), which excluded Patricia from any inheritance. Lastly, with respect to Patricia's counterclaim, the trial justice found Patricia's testimony credible and stated that she had established "damages in the amount of $82,000, plus statutory interest, for a debt owed her from [Mr. Voccola]."

The plaintiffs filed a motion for reconsideration with respect to the decision on the counterclaim, which the trial justice denied following a February 22, 2013 hearing. Final

judgment entered on March 12, 2013. The defendants then filed a timely notice of appeal on March 29, 2013. Subsequently, defendants' motion for a new trial was denied following an April 12, 2013 hearing. The plaintiffs then filed their cross-appeal three days after the hearing.

## II

### Standard of Review

The following quotation aptly describes the nature of our deferential review of the factual findings of a trial justice sitting without a jury in a civil case:

> "It is well established that the factual findings of a trial justice sitting without a jury are accorded <u>great</u> <u>weight</u> and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence. * * * If, as we review the record, it becomes clear to us that the record indicates that competent evidence supports the trial justice's findings, we shall <u>not</u> substitute our view of the evidence for [that of the trial justice] even though a contrary conclusion could have been reached." <u>Wellington Condominium Association v. Wellington Cove Condominium Association</u>, 68 A.3d 594, 599 (R.I. 2013) (emphasis added) (internal quotation marks omitted); <u>see</u> <u>Banville v. Brennan</u>, 84 A.3d 424, 429-30 (R.I. 2014); <u>D'Ellena v. Town of East Greenwich</u>, 21 A.3d 389, 391 (R.I. 2011); <u>B.S. International Ltd. v. JMAM, LLC</u>, 13 A.3d 1057, 1062 (R.I. 2011).

Moreover, "[i]t is self-evident that a trial justice sitting without a jury must often make credibility determinations in order to arrive at the necessary findings of fact." <u>B.S. International Ltd.</u>, 13 A.3d at 1062; <u>see also</u> <u>D'Ellena</u>, 21 A.3d at 391-92. We "accord a substantial amount of deference to [the trial justice's credibility] determinations, due to the fact that [he or she] has actually observed the human drama that is part and parcel of every trial and * * * has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." <u>Banville</u>, 84 A.3d at 430 (internal quotation marks omitted); <u>see</u> <u>D'Ellena</u>, 21 A.3d at 392; <u>B.S. International Ltd.</u>, 13 A.3d at 1062.

- 13 -

We also apply a deferential standard of review to mixed questions of law and fact, "as well as the inferences and conclusions drawn from the testimony and evidence." Banville, 84 A.3d at 430. However, we review questions of law de novo. Progressive Northern Insurance Co. v. Lyden, 986 A.2d 231, 233 (R.I. 2010); see Castelli v. Carcieri, 961 A.2d 277, 280 (R.I. 2008). In addition, this Court "is free to affirm on grounds other than those relied on by the trial justice." Progressive Northern Insurance Co., 986 A.2d at 233 (internal quotation marks omitted).

## III

## Analysis

## A

### The Validity of the Waivers and the Transfer of the Properties

The first issue which this Court is tasked with determining in this appeal is the validity of the waivers and, based on that determination, the validity of the transfer of the properties owned by CCI, CVR, and WSI to Red Fox. The defendants devote much of their appellate argument to the issue of the genuineness or lack of genuineness of the signatures of Mr. Voccola on the waivers. However, after a thorough review of the parties' arguments, the record in this case, and the exemplary decision of the trial justice, it is our conclusion that we need not even address the genuineness vel non of the signatures in order to review the trial justice's decision concerning the waivers and the transfer of the properties.[7] The trial justice clearly stated in her decision that the transfer of properties at issue, which transfer was executed in exchange for Patricia's

---

[7] Although we need not delve into the specific arguments raised on appeal with respect to the trial justice's determination that Mr. Voccola's signatures on the waivers were not genuine in order to determine the validity of the waivers and the transfer of the properties, the genuineness of the signatures does become relevant to our analysis of whether or not Mr. Voccola gifted the properties to Patricia. As such, some of the arguments raised by defendants on appeal with respect to the signatures will be briefly discussed in Part III.B, infra.

agreement to release the mortgages on the properties, was done without consideration due to the fact that Patricia had already agreed to release the same mortgages in the Settlement Agreement. We are in agreement with that determination; and, in our judgment, the lack of consideration renders the warranty deeds authorizing the transfer of the properties at issue null and void.

It is a well-established principle that a valid contract requires "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." DeLuca v. City of Cranston, 22 A.3d 382, 384 (R.I. 2011) (mem.) (emphasis in original) (internal quotation marks omitted); see DeAngelis v. DeAngelis, 923 A.2d 1274, 1279 (R.I. 2007). With respect to the requirement of consideration specifically, we have stated that consideration "consists of some legal right acquired by the promisor in consideration of his promise, or forborne by the promisee in consideration of such promise." DeLuca, 22 A.3d at 384 (quoting DeAngelis, 923 A.2d at 1279); see Darcey v. Darcey, 29 R.I. 384, 388, 71 A. 595, 597 (1909); see also Hayes v. Plantations Steel Co., 438 A.2d 1091, 1094 (R.I. 1982) ("In this jurisdiction, consideration consists either in some right, interest, or benefit accruing to one party or some forbearance, detriment, or responsibility given, suffered, or undertaken by the other."). In determining whether there is sufficient consideration to support a finding that a contract has been formed, "we employ the bargained-for exchange test; that test provides that something is bargained for, and therefore constitutes consideration, 'if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.'" DeAngelis, 923 A.2d at 1279 (quoting Filippi v. Filippi, 818 A.2d 608, 624 (R.I. 2003)); see also DeLuca, 22 A.3d at 384.

In this case, assuming without deciding that the waivers were signed by Mr. Voccola, Patricia bargained for the transfer of the properties to Red Fox and Mr. Voccola bargained for

the release of the mortgages on the properties held by Patricia. Each promise induced the other promise. However, the Settlement Agreement provides as follows: "[Patricia, Stephen, Paul, and Barbara] agree forthwith upon the signing of this agreement to discharge and/or release all mortgages and promissory notes which reference [Mr. Voccola], Jere Realty, Inc., Lakeview Realty, Inc., [CCI, WSI, and/or CVR]." Based upon the clear and unambiguous language of the Settlement Agreement, Patricia was obligated to release the mortgages she held on the property. See Rivera v. Gagnon, 847 A.2d 280, 284 (R.I. 2004) ("If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written."). Due to the fact that the Settlement Agreement predated the signing of the waivers, it necessarily follows that, at the time of the signing of the waivers, Patricia was already obligated to release the mortgages. Therefore, the consideration she promised to Mr. Voccola, which induced his promise to transfer the properties, was nonexistent because it was something which she was already under a contractual obligation to carry out.

It is a basic principle of contract law that "[a] promise to carry out a preexisting contractual obligation owed to the promisee, or the performance of such a contractual duty, generally is not sufficient consideration; in such a case, the obligor is doing no more than he or she was already obliged to do and, thus, has sustained no detriment, nor has the other party to the contract obtained any benefit." 17 C.J.S. Contracts § 153 at 535 (2011). Thus, "when a party performs an obligation owed under a preexisting contract, the law ordinarily will regard a demand by that party for additional benefits as void for lack of consideration." Id. That is precisely the situation with which we are presented—Patricia was essentially seeking additional benefits in the form of the transfer of the properties in exchange for the same promise that she had made in the Settlement Agreement. As such, the signing of the waivers in the instant case

was not accompanied by the legal consideration necessary to make those waivers binding contracts. See DeLuca, 22 A.3d at 384. Accordingly, the trial justice did not err in holding that the three warranty deeds transferring the properties at issue were null and void.

The defendants contend that the waivers were supported by adequate consideration because Patricia was "not bound" by the Settlement Agreement. They aver that Patricia was not a party to the 2005 lawsuit and that, therefore, there was no consideration for her signing of the Settlement Agreement. However, defendants fail to recognize that, although the Settlement Agreement resolved the issues involved in the 2005 litigation and resulted in its dismissal, the fact that Patricia was not a party to that action does not mean she did not have an interest in the resolution of that action as a shareholder in Redbrook. The Settlement Agreement resolved conflicts among Stephen, Barbara, and Mr. Voccola that were directly related to and directly affected Redbrook. Patricia was a shareholder of Redbrook. As such, she had an interest in the resolution of the 2005 suit. Thus, it is clear to us that the Settlement Agreement was a valid and enforceable contract made with adequate consideration. See id.

In conclusion, it is our judgment that the three warranty deeds at issue were null and void due to the lack of consideration for the signing of the waivers. Accordingly, we perceive no error in the trial justice's decision in that regard.[8]

---

[8] The defendants additionally contend on appeal that the trial justice committed error in declaring that the waivers were legally ineffective because the exhibits describing the properties (i.e., Exhibit A) were missing. The defendants aver that the omission of the exhibits was a "mere 'scrivener's error.'" Due to the fact that we find the waivers and, thus, the conveyance of the properties to be void as lacking in consideration we need not address the effect of the missing exhibits. See Grady v. Narragansett Electric Co., 962 A.2d 34, 42 n.4 (R.I. 2009) (referencing this Court's "usual policy of not opining with respect to issues about which we need not opine").

# B

## Gift

The defendants also contend that the trial justice erred when she determined that the transfer of Mr. Voccola's properties was not a gift to Patricia. They fault the trial justice for looking to Mr. Voccola's actions after the supposed signing of the waivers because they contend that what was at issue was his present intent at the time of the alleged gift. They further aver that the trial justice did not give adequate consideration to the evidence which reflected that Mr. Voccola had stated several times before the signing of the waivers that he was going to give Patricia all of his properties. Lastly, they claim that, due to the fact that this was a transfer of property from a father to a child for no consideration, it was presumptively a gift.

We begin our analysis by reviewing our well-settled jurisprudence with respect to what constitutes a gift. There are two elements which are required for a valid inter vivos gift. See Notarantonio v. Notarantonio, 941 A.2d 138, 150 (R.I. 2008). Those elements are: "'a present true donative intent'" and "'some manifestation such as an actual or symbolic delivery of the subject of the gift so as to completely divest the donor of dominion and control of it.'" Dellagrotta v. Dellagrotta, 873 A.2d 101, 110 (R.I. 2005) (quoting Black v. Wiesner, 112 R.I. 261, 267, 308 A.2d 511, 515 (1973)); see also Silva v. Fitzpatrick, 913 A.2d 1060, 1063 (R.I. 2007); Ruffel v. Ruffel, 900 A.2d 1178, 1189 (R.I. 2006). It has been our consistent holding as follows:

> "[A] claimant has the burden of establishing a gift inter vivos by clear and satisfactory evidence. * * * He must establish by such degree of proof that the donor intended * * * to divest himself of the exclusive ownership and control over the subject matter of the alleged gift and to vest such ownership and control jointly in the claimant. In other words, such gift must be fully executed and go into immediate and present effect." Wyatt v. Moran, 81 R.I. 399, 403, 103 A.2d 801, 803 (1954); see Slepkow v. Robinson, 113 R.I.

550, 553, 324 A.2d 321, 324 (1974); see also Tabor v. Tabor, 73 R.I. 491, 493, 57 A.2d 735, 736 (1948); Weber v. Harkins, 65 R.I. 53, 59, 13 A.2d 380, 382 (1940).

We note that "[t]he requirement of donative intent is the essence of a gift." Restatement (Third) Property § 6.1 cmt. b. at 5 (2003). In cases where donative intent is at issue, it is a factual question to be resolved by the trier of fact. Mitchell v. Mitchell, 756 A.2d 179, 183 (R.I. 2000); see also Gim v. Jan Chin, Inc., 117 R.I. 39, 43, 362 A.2d 143, 146 (1976) (stating that "[w]hether [the party at issue] had the donative intent necessary to create a gift is a question of fact"). Donative intent "may be expressed in words, actions, or a combination thereof and may be inferred from the surrounding facts and circumstances, including the relationship of the parties * * *." 38 Am. Jur. 2d Gifts § 16 at 773 (2010). While a gift does require a present donative intent, we are in agreement with other jurisdictions that "[w]here the intention to make a gift is not clearly manifested, subsequent acts may aid in clarifying that intention." Ferer v. Aaron Ferer & Sons Co., 732 N.W.2d 667, 674 (Neb. 2007); see In re Chapple's Estate, 2 A.2d 719, 721 (Pa. 1938); see also 38A C.J.S. Gifts § 16 at 203 (2008).

The defendants posit that the trial justice's decision that the transfer of properties was not a gift was improperly "based exclusively on her own examination of the CCI and CVR waiver signatures, [Ms.] Patchis' deposition testimony on the WSI waiver signature, and the trial justice's findings about the Decedents';s [sic] words and actions that took place more than a year after he gave the properties to [Patricia]." (Emphasis in original.) Upon a thorough review of the record and the trial justice's comprehensive decision, we simply cannot agree that the trial justice erred in her determination that the transfer of the properties was not a gift or that she erred in the facts which she chose to consider in making that determination. She definitively stated

- 19 -

that defendants had "failed to establish by clear and satisfactory evidence either a present donative intent or delivery of the subject of the gift." We are in agreement.

The defendants correctly observe that we have endorsed the principle that the law presumes a gift when the conveyance is from a parent to a child provided there is no "clear and convincing evidence to the contrary." Romano v. Romano, 99 R.I. 33, 38, 205 A.2d 583, 586 (1964). However, we note initially that the transaction at issue in this case does not bear the hallmarks of a gift from a parent to a child. The transaction at issue was a conveyance from three corporations to one corporation in return for what, if Mr. Voccola did in fact sign the waivers, he must have believed was adequate consideration (although we have now determined it was not). Indeed, the title of the waivers indicates the nature of the transaction: "Waivers of Notice of Minutes of a Special Joint Meetings [sic] of the Stockholders and Board of Directors of [CCI, CVR, and WSI] respectively." We note as well that the size of the conveyance—nearly two million dollars worth of property—and the fact that the purported transfer, surprisingly, came very soon after Mr. Voccola had spent several years on the 2005 litigation in an attempt to regain control of one of his properties that was then owned by Redbrook. Moreover, after a review of the record in the instant case, it is our judgment that the evidence in this case is such that it appears that any presumption of a gift which may have existed was effectively rebutted.

Indeed, the testimony suggesting that Mr. Voccola did sign the waivers, which would have supported a determination of donative intent, was found by the trial justice not to be credible. She specifically said that she did not find credible the testimony of Paul and Stephen to the effect that it was their father's signature on the waivers. Additionally, the trial justice gave "little weight" to the testimony of Mr. Salvatore and Mr. Fernandez due to their close relationships with Patricia. We accord her credibility determinations and any inferences or

conclusions which she drew from them substantial deference. See Banville, 84 A.3d at 430. We acknowledge that there was testimony that Mr. Voccola had told Patricia in the past that he would give her all of his properties. However, due to the fact that, if Mr. Voccola signed the waivers, he clearly did so believing that there was adequate consideration (which is not characteristic of a gift) coupled with the fact that there was disagreement as to whether or not Mr. Voccola actually signed the waivers, we simply cannot say that Mr. Voccola's donative intent was clearly manifested <u>at the time he purportedly signed the waivers</u> in the instant case. See Ferer, 732 N.W.2d at 674. As such, we see no error on the part of the trial justice in looking to acts taken by Mr. Voccola after he purportedly signed the waivers in determining whether or not defendants had met their burden of proving that the transfer was an <u>inter vivos</u> gift. See id.

When the post-conveyance acts of Mr. Voccola are considered, it becomes clearer to us that the trial justice correctly concluded that the conveyance of the properties at issue was not a gift. Stephen testified that Mr. Voccola asked him to sue Patricia to get the properties back. Barbara testified that Mr. Voccola only found out from Paul that Patricia had transferred his properties and that Mr. Voccola asked Patricia to "give him back all of his property." Edward testified that his father told him that he never signed the WSI waiver. What is more, Mr. Voccola's 2008 will and later codicil excluded Patricia from any inheritance unless she returned the properties at issue. Moreover, we find it relevant that no gift tax return was filed by Patricia or Red Fox with respect to the conveyance of the properties at issue.[9]

---

[9] We recognize that we have stated that the existence of a gift tax return is not "conclusive evidence that a gift has been made." Gervais v. Gervais, 688 A.2d 1303, 1306 (R.I. 1997) (internal quotation marks omitted). However, "[w]e read th[at] statement simply to mean that gift-tax returns should be considered but are not to be treated as a final litmus test." Id.

In addition to all of the just-referenced facts that we consider to be reflective of a lack of donative intent, we note that the trial justice found that Mr. Voccola did not in fact sign the waivers, negating any argument that the properties were transferred in accordance with Mr. Voccola's donative intent. We decline any invitation by defendants to second-guess the credibility determinations of the trial justice with respect to the two handwriting experts presented at trial. See Banville, 84 A.3d at 430. It is clear to us that her determinations were supported by the testimony elicited at trial. We also find no error in the trial justice's using her own analysis of the signatures with respect to the WSI waiver as one of several reasons why she found the signatures not to be genuine.[10]

Donative intent is an issue of fact. See Mitchell, 756 A.2d at 183. We give such determinations by a trial justice great weight; and, as the many just-discussed facts indicate, there was a more than ample factual basis on which the trial justice could have based her determination that Mr. Voccola was not executing an inter vivos gift when he purportedly signed the waivers and the properties at issue were ultimately transferred. See Wellington Condominium Association, 68 A.3d at 599.[11] Accordingly, we perceive no error on the part of the trial justice in her ruling rejecting defendants' gift-related contentions.

---

[10] We deem it important to note that defendants' contentions on appeal with respect to the validity of Mr. Voccola's signatures include a contention that the presumption of validity of the signatures was never rebutted with respect to the CVR and CCI waivers and that it was inappropriate for the trial justice to rely on her own analysis of the signatures on the CVR and CCI waivers since her determination was the only evidence that those signatures were not genuine. However, we need not address these contentions further because the validity of the signatures is only one factor affecting the gift analysis; and, in our judgment, there are ample factors, quite apart from the question of the genuineness of the signatures on the CVR and CCI waivers, indicating that the conveyance of the properties at issue was not a gift.

[11] We deem it prudent to address one further issue raised by defendants on appeal. The defendants aver that the trial justice committed error in refusing to admit into evidence testimony by Dr. Seifer with respect to the validity of Mr. Voccola's signatures on the CCI and CVR

- 22 -

## C

### Patricia's Counterclaim

On appeal, plaintiffs contend that the trial justice erred when she awarded Patricia $82,000 on her counterclaim. They aver that it was not clear whether the allegations in the counterclaim encompassed monies paid by Patricia in relation to Mr. Voccola's criminal fines. Moreover, they posit that the Settlement Agreement resolved any claims with respect to the $82,000 Patricia paid on Mr. Voccola's behalf.

The trial justice, in ruling on the counterclaim, stated that Patricia "testified credibly that she took out a mortgage on her house to pay for some of [Mr. Voccola's] criminal fines." The trial justice also noted that there was corroborating testimony from Stephen that Patricia paid Mr. Tosoni approximately $80,000. We afford substantial deference to the trial justice's credibility determinations. See Banville, 84 A.3d at 430. We note as well that the mortgage deed from Mr. Voccola to Mr. Tosoni and the Assignment of Mortgage from Mr. Tosoni to Patricia were entered as exhibits at trial and tended to further buttress Patricia's credibility as to this issue. Moreover, after reviewing and pondering over the plaintiffs' contentions on appeal, we are unable to say that the trial justice lacked competent evidence to support her conclusion with respect to the counterclaim. See Wellington Condominium Association, 68 A.3d at 599 ("If, as we review the record, it becomes clear to us that the record indicates that competent evidence

---

waivers. In this case, defendants failed to comply with Rule 33(c) of the Superior Court Rules of Civil Procedure when they failed to update their answers to interrogatories so as to state that Dr. Seifer would be testifying with respect to all of the waivers, and not simply the WSI waiver. We do not detect any abuse of discretion by the trial justice in refusing to admit the testimony as a result. See International Depository, Inc. v. State, 603 A.2d 1119, 1124 (R.I. 1992) ("The decision to impose a particular sanction [for a violation of Rule 33] is within the sound discretion of the trial court."). Moreover, even if there had been error, it would not have affected our ultimate conclusions that the deeds were void for lack of consideration and that the conveyance of the properties was not a gift.

supports the trial justice's findings, we shall not substitute our view of the evidence for [that of the trial justice] even though a contrary conclusion could have been reached.") (internal quotation marks omitted). Accordingly, while readily acknowledging that reasonable minds could differ as to this issue, we shall not substitute our judgment for that of the trial justice.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court in all respects. We remand the record to that tribunal.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Barbara A. Voccola and Edward R. Voccola, in their capacities as Co-Executors of the Estate of Edward E. Voccola v. Patricia A. Forte et al.

**CASE NO:**      No. 2013-216-Appeal.
(PC 08-1467)
No. 2013-217-Appeal.
(PC 08-6628)
No. 2013-220-Appeal.
(PC 08-1467)

**COURT:**      Supreme Court

**DATE OPINION FILED:**      June 13, 2016

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

For Plaintiffs:   Lauren E. Jones, Esq.
                           Robert S. Thurston, Esq.

For Defendants:  Barry J. Kusinitz, Esq.
                           Michael J. Kiselica, Esq.